# CHARLESTON.

## SNYDER et al. v. W. C. AND J. B. CABELL.

Submitted September 13, 1886.—Decided November 13, 1886.

*(SNYDER, JUDGE, Absent.)

1. EQUITY—JOINDER OF PARTIES.

There is no inflexible rule as to the joinder of parties in a court of chancery.

2. EQUITY—JOINDER OF PARTIES.

The general rule is, that several complainants having distinct and independent claims to relief against a defendant can not join in a suit for the separate relief of each. Nor can a single complainant having distinct and independent claims for relief against two or more defendants severally join them in the same bill.

3. EQUITY—JOINDER OF PARTIES—JUDICIAL DISCRETION.

The chancery court exercises a sound discretion in determining, whether there is a misjoinder of parties, under the particular circumstances of each case.

4. EQUITY—JOINDERS OF PARTIES—NUISANCE.

Two or more persons owning separate and distinct tenements, whether they occupy the premises by themselves or by tenants, may together with the tenants, where the tenements are lessened in value or made materially uncomfortable as homes by a nuisance,,

*One of the parties to the suit.

which is a common injury to all the tenements and their residents, may join in a suit to restrain such nuisance.

5. EQUITY—INJUNCTION—NUISANCE—NOISE.

Where the prosecution of a business in itself lawful in the neighborhood of a dwelling-house renders the occupation of it materially uncomfortable by noises alone, the carrying on of such business, while it produces such results, will be restrained by a court of equity.

6. EQUITY—INJUNCTION—SKATING RINK—NOISE—NUISANCE.

A skating rink erected within a short distance of a dwelling, when the noise from the skating and attending it was of such a character as to materially interfere with the comfort and enjoyment of the inmates of such dwelling, was properly enjoined by a court of equity.

7. EQUITY—INJUNCTION—SKATING RINK—NUISANCE.

A bill was filed to enjoin the erection and operation of a skating rink; the injunction was granted, and evidence was taken, which showed, that the use of said building as a skating rink would be a nuisance; but the court on motion dissolved the injunction, reserving to the petitioners the right to apply for a re-instatement of the injunction, after the rink should be in operation; a supplemental bill was filed charging, that the rink in operation in consequence of the crowds and noise produced was a nuisance; answer was filed, and proof taken, which showed, that the rink was a nuisance; but on the final hearing the court refused to reinstate the injunction and dismissed the original and supplemental bills; this Court reverses both decrees and reinstates and makes perpetual the injunction.

*T. L. Broun* and *E. B. Knight* for appellants.

*Payne & Green* for appellees.

JOHNSON, PRESIDENT:

The bill was filed in August, 1885, by the plaintiffs in the Circuit Court of Kanawha county to enjoin a threatened nuisance. The plaintiffs were A. C. Snyder, who owned a house on Washington street, and T. L. Broun, his tenant, Edward B. Knight, who as trustee of Sarah Sentz held the legal title to a house on the corner of Washington and Brooks streets, Sarah A. Sentz, John W. Sentz, the husband of Sarah, who with his family resided in said house, and Edward Penn, who owned and with his family resided in a house on Washington street. The bill alleged, that the defendants, the Cabell brothers, in July, 1885, commenced

preparation for building a large skating rink on a lot, which they owned on said Washington street in the city of Charleston; that the rink was to be constructed between the residences of said Broun and Sentz; that in size it was to be sixty by one hundred feet; that it was to be constructed within twenty-eight or thirty feet of the residences of said Broun and Sentz and within a few feet of Washington street; that complainants served notice on them, shortly after they commenced hauling material to build said rink, protesting against its construction there; that the erection of said rink would seriously impair the quiet comfort and enjoyment of the homes of said Sentz, Broun and Penn and their respective families; that its erection would draw large and boisterous crowds thereto night and day and would deprive the said occupants of said respective premises of that enjoyment of their homes, which they then had and for a long time had had; and that the annoyance and inconvenience to the said parties and their families, which would be brought about by the operation of said rink, would materially interfere with their ordinary comfort; that the noise caused by the skating in the rink and that produced by the crowd in and outside of the rink and the music, which accompanies the exhibitions, all taken together will seriously diminish the value of the said property belonging to complainants and also the comfort and enjoyment of the same; that in case of sickness in any one of the families of complainants occupying the premises aforesaid, the loud, boisterous and continuous noise caused by the skating at such skating rink would materially interfere with the recovery of such sick person; that during the summer, when open doors and windows are essential to the health and comfort of a family, the noise of the skating would destroy the comfort of complainants, who reside on the adjoining premises; that such damage to the property and to the rest and comfort of complainants would be irreparable; that the erection of such building and its use as a skating rink would prove an unmitigated nuisance to the complainants; that, unless said defendants should be restrained, they would erect such building and use it for a skating rink. The bill prayed for an injunction from using said building as a skating rink.

On the 7th day of August, 1885, the injunction as prayed for was granted. The defendants did not demur to the bill, nor did they in their answer object to the bill because of misjoinder of parties.

The answer admits, that the defendants intend to use said building, which they were erecting, as a skating rink, but aver, that it was not the only use to which they expect to devote it; that they propose to use it for fairs, festivals, exhibitions, lectures and other similar entertainments. It avers, that, before they received notice from complainants, that they objected to its use as a skating rink, they had made their contract for its erection. It denies, that the use of said building as a skating rink will interfere with the comfort of complainants. The answer specifically denies each allegation of the bill, which alleges, that the noise from skating or from the crowds or music will materially interfere with the comfort of the plaintiffs. They say in their answer, that skating rinks are not nuisances *per se ;* that they are numerous all over the country, and in this State they are recognized and legalized by statute ; that they obtained a permit from the city-council of Charleston to erect it, and, if it is a nuisance, it is the right and duty of the city-council to abate nuisances within said city. They say, that it will be built with a double floor with saw-dust between the floors, so as to deaden the sound and make it less than with the ordinary floor ; that, if any inconvenience, annoyance or injury does result to the properties of the plaintiffs or to the enjoyment thereof by themselves and families by reason of the use of said building as a skating rink, it will only be such slight and incidental annoyance, inconvenience and injury, as result from the lawful and legitimate use of respondents' said property, and will be *damnum absque injuria.* They further aver, that the principal objection, that complainants have, to the erection and use of said building as a skating rink is, that respondents are of that class of people commonly called colored people, and that colored people are to be admitted to the exercises in said building. They admit, that colored people are to be admitted into the building, but deny, that that will make it a nuisance. They aver, that "It would be inequitable and unjust to continue and perpetuate the in-

junction and deprive them of the right to use their said building as a skating rink, until it shall have been shown by its use as such, that it is a nuisance; for, although respondents propose to use said building for other purposes than skating, yet such uses alone will not be remunerative to respondents nor repay them for the outlay and expense, to which they will be put, and respondents are persons of limited means and not able to bear such loss."

Many depositions were taken; and respondents moved to dissolve the injunction. On the 9th day of October, 1885, the cause was heard on said motion to dissolve; and the court did dissolve the injunction and gave costs against the plaintiffs but in the decree "reserved the right to complainants to have the said injunction reinstated, whenever, if at any time, the use of said building as a skating rink or for any other purposes shall become a nuisance to said complainants or any of them, and the court directs this cause to be continued on the docket for that purpose."

On the 24th day of November, 1885, the plaintiffs filed a supplemental bill, in which they alleged, that shortly after the decree dissolving the injunction was rendered, the said building was completed and used as a skating rink, and the same has been used as such nearly every day or night since except Sundays; that the noise and disturbance created by said skaters and the crowds, that assemble at said rink both day and night and especially at night, are a very serious annoyance and disturbance to the plaintiffs, Broun and Sentz, and their families; that the rest and sleep and the quiet enjoyment of the homes of said Sentz and Broun are much disturbed and interfered with by the running of said skating rink, by the noise of the skaters and by the yelling and shouting of the audience and by the crowds of people going to and from said rink, and by the music, which sometimes constitutes a part of the performance; that there has been sickness in the family of Sentz during the past four weeks, which has been greatly aggravated by the noise and disturbance created by the skaters and audience at the skating rink; that the said noise and disturbance would very seriously retard the progress of the recovery of a sick person living in the

dwelling-house of either Broun or Sentz or Penn; and that in case of typhoid fever at their said houses such noise and disturbance would in the opinion of physicians probably prove fatal to the patient; that the use and occupation of said building as a skating rink is and has been a nuisance to the families of Broun and Sentz and does disturb and will continue to disturb the quiet rest, sleep, comfort and enjoyment of said plaintiffs and their families at their said houses, so long as said building is used as a skating rink; that the skating at said rink is carried on at times both day and night and until ten o'clock at night, and sometimes later; that said defendants will continue to use said building as a skating rink; until enjoined from so doing. The supplemental bill prays for an injunction, and that the injunction dissolved shall be reinstated.

Defendants demurred to this bill, first for want of equity, and secondly, because of misjoinder of plaintiffs, insisting that Snyder and Knight had no interest in the suit. They also answered the supplemental bill denying the allegations therein as to the disturbance by the use of the building as a skating rink. They admit, that they are so using it. They say, that plaintiff, Brown, has moved away from the Snyder house to a house beyond the reach of any noise from the rink, and that he had rented the new residence, before he filed the amended bill. They say, that Penn can not complain, because he sometimes aids and abets the use of the building as a skating rink. Many depositions were taken on the issues in the supplemental bill.

On the 19th day of June, 1886, the cause was heard on supplemental bill, demurrer thereto, answer of defendants and general replication and depositions and papers heretofore filed and proceedings had in the cause. The court overruled the demurrer, and being of opinion, that none of the plaintiffs were entitled to the relief prayed for in the supplemental bill, refused to reinstate the injunction, and decreed that said amended and supplemental bill be dismissed at the costs of plaintiffs, and that the original bill be dismissed, and awarded execution for costs, as then decreed, and as decreed on the 9th of October, 1885.

From this decree as well as from the decree of the 9th of October, 1885, the plaintiffs appealed.

The appellees insist, that both bills should have been dismissed because of misjoinder of parties. They base this misjoinder on the ground, that Snyder and Knight, trustee, had no interest in the suit and should not have been made parties to it; that only such persons can maintain a bill in equity to restrain a nuisance, as can bring their actions at law for damages on account of such nuisance. To sustain this position they cite *Demorest* v. *Hardman*, 34 N. J. Eq. 469; *Railroad* v. *Prudden*, 20 N. J. Eq. 530; *Henchman* v. *Railroad Co.*, 17 N. J. Eq. 75; *Hudson* v. *Madison*, 12. Sim. 416; *Walker* v. *Powers*, 104 U. S. 245.

The case in 104 U. S. seems to have no bearing on the subject. It was there held, that a bill is subject to objection for multifariousness, if one of the complainants has no standing in court, or when they set up antagonistic causes of action, or when the relief, for which they respectively pray, in regard to a portion of the property sought to be reached involves totally distinct questions requiring different evidence and leading to different decrees. In that case the general purpose of the bill was to have certain sales and conveyances of real estate declared null and void.

In *Hudson* v. *Madison*, 12 Sim. 416 (35 Eng. Chy. 352,) it was decided, that, where a bill filed by five several occupiers of houses in a town to restrain the erection of a steam-engine, which would be a nuisance to each of them; that each occupier had a distinct right of suit, and that therefore they could not sue as co-plaintiffs.

In *Demorest* v. *Hardman*, 34 N. J. Eq. 469, it was held, that several persons may join in a suit to restrain a nuisance, which is common to all and affects each in the same way; but, when several persons owning distinct parcels of land or occupying different dwellings and having no common interest seek to restrain a nuisance in consequence of the special injury to each particular property, each person must bring a separate suit and obtain relief, if at all, on his own special wrongs. To the same effect are the other two cases cited from New Jersey. But respectable authority can be found on the other side of this question and to my mind more reasonable and convenient in practice.

In *Reid* v. *Gifford*, Hopk. Ch. 419, the chancellor said : " The complainants are several proprietors of distinct lands and mills and of several parts of the natural water-course ; and the defendants object, that the complainants having distinct rights can not join in this suit. This objection seems more specious than solid. The rights of the general complainants to their respective land are indeed distinct ; but the grievance in question is a common injury to all the complainants. The water in its natural descent from the lake becomes the property of each of the complainants successively. All the complainants thus have rights in the same subject ; and the nature of the case forms a community of interest in the complainants. One creditor may sue in equity for himself and other creditors having like rights, and yet the debts demanded are distinct and arise from separate contracts. The common claim of the different creditors to the same relief is considered in equity as one demand ; and separate suits are not necessary. The rule of the equity court is, that the matters, which may be demanded by one suit, must be of the same nature, (Mitford Ch'y Pl., 146 ). This suit is founded on an injury done to all the complainants ; the wrong is done or continued by all the defendants, and it is a matter of one nature, and the relief sought by all the complainants is the same."

In *Robinson* v. *Baugh*, 31 Mich. 290, nineteen separate property-owners filed a bill to enjoin a defendant from using his premises in such a manner as to be a nuisance and specially and greatly injurious to them in property, comfort. and health. His business was that of forging, which he conducted in low wooden buildings and on a large scale, using steam and a large amount of bituminous coal and working four steam-hammers, one of which weighed thirty-five hundred pounds. The smoke, soot and noise greatly annoyed the plaintiffs. It was objected, that the suit could not be maintained, because the plaintiffs were separate and distinct property-owners with distinct interests. The court, by Graves, C. J., said: "Upon the circumstances of this case we think the objection not maintainable. The rights asserted by complainants, and for which they ask protection, are alike, and the grievance stated in the bill and charged

against the defendant has one source and operates in the same general manner against the agreeing and equivalent rights of all the complainants. If his works as conducted are a nuisance to complainants, they are a nuisance to all in the same way. The case presents no diversity to cause embarrassment in dealing with it; and we should only sacrifice substance to useless form by giving any sanction to the point, if there were no authority to favor its rejection. But without going far we are able to cite such authority." He cites *Scofield* v. *Lansing*, 17 Mich. 437; *Middleton* v. *Booming Co.*, 27 Mich. 533; *Peck* v. *Elder*, 3 Sandf. Sup. Ct. R. 126, and *Reid* v. *Gifford*, Hopk. Ch'y 416.

In *Peck* v. *Elder*, 3 Sandf. Sup. Ct. R. 126, note, Chancellor Walworth said: "The objection, that different persons, owning separate tenements, which are injuriously affected by a nuisance, can not join in a suit to restrain such nuisance, is untenable. * * * So far as the bill seeks merely to restrain by injunction a nuisance which is a common nuisance to each and every of the complainants, there is no good reason, why they should not all be permitted to join in one suit instead of multiplying cases by bringing several distinct suits. * * * And it is of no consequence, whether the complainants reside on their property or not. It is sufficient, that the nuisance is calculated directly to diminish its value by preventing its being occupied by the complainants or by good tenants, who are able and willing to pay the rent, or to destroy the value of the property as building-lots." In that case one or more of the plaintiffs did not occupy their property.

In *Marcy* v. *Hay*, 1 Barb. Ch'y 59, it was held, that there is no inflexible rule as to joinder of parties in a court of chancery. Yet as a general principle several complainants having distinct and independent claims to relief against a defendant can not join in a suit for the separate relief of each. Nor can a single complainant having distinct and independent claims to relief against two or more defendants severally join them in the same bill. But there are many exceptions to this rule; and the court exercises a sound discretion in determining, whether there is a misjoinder of parties under the particular circumstances of each case. Two or more per-

sons having separate and distinct tenements, which are injured or rendered uninhabitable by a common nuisance, or which are rendered less valuable by a private nuisance, which is a common injury to the tenements of both, may join in one suit to restrain such nuisance.   Chancellor Walworth in his opinion said : " The particular question, which arises in this suit, whether two or more persons having separate and distinct tenements, which are injured or rendered uninhabitable by a common nuisance, or which are rendered less valuable by a private nuisance, which is a common injury to the respective tenements of each of the complainants, may join in a suit to restrain such nuisance, does not appear to have been raised in England until recently and then in a single case only, which was not very fully considered.   In the case of *Spencer* v. *Railway Co.*, 1 Nic. Ha. C. 159, which came before the Vice-Chancellor of England in 1836, the bill was filed by the landlord and his tenant for a nuisance, which was supposed to be an injury to the interest of each in the property; and an injunction was granted without raising the question of misjoinder of parties.

" The same thing occurred in the case of *Sutton* v. *Montfort*, 4 Sim. 559, which came before the same equity-judge five years previous, where two tenants of different buildings having no joint interest joined with the landlord of both in filing the bill to restrain the nuisance.   But in the more recent case of *Hudson* v. *Madison*, 5 Lond. Jur. 1,104, which came before him in December, 1841, where five different owners of separate houses had joined in a bill to restrain a nuisance, which was a common injury to all their houses, he seems to have taken it for granted, that the objection of misjoinder of complainants would be fatal at the hearing, and dissolved the injunction on that ground alone, (12 Sim. 416). Even if that case may be considered as finally settling the question in England, which, I presume, it does not, as it does not appear to have received the sanction of the Lord Chancellor upon appeal or otherwise, I do not consider myself at liberty to follow that decision here, as the question was settled by this court directly the other way more than twenty years since." He there refers to *Reid* v. *Gifford*, Hopk. Ch'y.

8

There can be no good reason shown, why persons owning separate and distinct properties or occupying them as tenants, who are all affected in the comfort and enjoyment of their homes by the same nuisance, may not join in one suit to restrain it. I can not see how the defendant is injured by such joinder, whether the plaintiffs own the different properties, or some are owners and some tenants. If none of them can show, that they are affected by the nuisance, of course the injunction will be dissolved, and the bill dismissed with costs. It is not like an action at law to recover damages for the nuisance, where, if such joinder were permitted, some might be entitled to greater damages than the others because of their nearer proximity to the nuisance. They would not be permitted to join at law, because so many issues would be raised with the different plaintiffs, that it would be difficult for the defendant to defend himself. But in chancery, no matter how many plaintiffs there may be, the one question is: Does the defendant maintain a nuisance as to any of them? No money is demanded of him; but it is asked in the bill, that his nuisance be restrained, because it is a nuisance to the plaintiffs; and if any one of the plaintiffs fails to show, that his property or comfort is affected by it, and the defendant has incurred costs to show, that his property or comfort is not affected, the bill as to him ought to be dismissed with costs. But if it is shown to be a nuisance, and that any one of the complainants is materially affected by it, it should be restrained with costs to the party prevailing. The cases, which we have cited from New York and Michigan, are based on sound reason as well as convenient practice.

The bill was not demurrable; neither was the supplemental bill. But, even if this were not true, and there was in fact a misjoinder of parties, it was not properly taken advantage of. The rule is well settled, that in cases of misjoinder of parties as plaintiffs in equity the objection must be made by demurrer, if the defect is apparent on the face of the bill, or by plea and answer, if the defect does not so appear; and unless so made the objection will not avail at the hearing, if a decree can be rendered without prejudice to the rights of the parties. ( *Vaiden* v. *Stubblefield*, 28 Gratt. 153; *Armstrong* v. *Thurston*, 11 Md. 148.) There was no demurrer to the

original bill. The misjoinder, if it existed, appeared on the face of the bill, and it was not, until many depositions had been taken, and costs accrued, and after the supplemental bill had been filed, that the demurrer was interposed to the supplemental bill. As a proper decree could have been rendered without prejudice to the parties, the objection came too late.

Was a proper case made by the pleadings and proof for the interposition of a court of equity? Says Mr. Wood in his excellent work on nuisances: "It would be impossible to give all the instances, in which courts of equity have interfered or refused to interfere in cases of nuisances. It is enough to say, that, when the right is clear, and the nuisance is established, a court of equity will always interfere, if the nuisance results from an unlawful act, is continuous in its nature or, if only temporary, if it is not adequately compensable in damages. * * * Injunctions have been granted to prevent the erection of slaughter-houses in the vicinity of dwellings, even where the neighborhood had in a measure been given up to trades of a noxious character,—to prevent the continuance of the business of slaughtering cattle in the vicinity of dwellings, even when the slaughter-house was established, before any dwellings were erected in the vicinity,— to restrain the erection of glue-works,—of works for the preparation of blood as an ingredient for prussian blue,—of melting-houses, and fat boiling establishments,—for preparation of tripe,—for the manufacture of gas,—to prevent the use of cattle-yards,—the burning of bricks near dwellings,—planing-mills emitting dense volumes of smoke,— potteries,—the use of mineral coal as fuel,—the burning of lime kilns,—the maintenance of livery-stables near dwellings impairing their comfort by noxious stenches and drawing flies to the vicinity,—a turpentine distillery,—the carrying on of noisy trades near a dwelling at unreasonable hours or so as to impair its comfortable enjoyment or so as by agitating and varying sounds and motions to produce actual injury to property,—the performance of brass-bands in the vicinity of dwellings, collecting crowds and impairing the comfortable enjoyment of property,—a regatta near a dwelling, collecting a crowd,—running railroad-cars near a church

on the Sabbath and letting off steam, blowing the whistle
and ringing the bell so as to disturb divine worship there and
injure the value of the property for church purposes,—the
pollution of water so as to impair its use for domestic pur-
poses or manufacturing purposes, or so as to cause the emis-
sion of noxious smells, or so as to destroy it for domestic
use, or so as to injure the navigability of the stream, or so
as to impair the value of wharf-property." (Wood on Nui-
sances, sec. 801, and cases cited.)

In *Bishop* v. *Banks*, 33 Conn. 118, it was held, that the
bleating of calves kept over night at a slaughter-house to be
slaughtered in the morning was such a serious annoyance to
a family dwelling near, as to be a nuisance, which must be
abated. In delivering the opinion, Park, J., said : "It is dif-
ficult to conceive of any noise more destructive to the com-
fort and happiness of a family than the constant wailing of
animals in distress in the immediate vicinity of their resi-
dence. Enjoyment under such circumstances would require
nerves of brass and a heart of steel. * * * The defend-
ant should remember the maxim *sic utere tuo ut alienum non
lædas* and act accordingly."

In *Ditman* v. *Repp*, 50 Md. 517, the court decided, that
noise alone, if of such a character as to be productive of ac-
tual physical discomfort and annoyance to a person of ordi-
nary sensibility, may create a nuisance and be the subject of
an action at law or an injunction from a court of equity,
though such noise may result from the carrying on of a trade
or business in a town or city."

In *Adams* v. *Michael*, 38 Md., 123, it was held, that a court
of equity will interfere by injunction to restrain an existing or
threatened nuisance to a dwelling-house, if the injury be shown
to be of such a character, as to diminish materially the value
of the property as a dwelling and seriously interfere with the
ordinary comfort and enjoyment of it, if it appear to be a
case where substantial damages could be recovered at law.

In *Catlin* v. *Valentine*, 9 Paige 575, it was decided, that
to constitute a nuisance it is not necessary, that the noxious
trade or business should endanger the health of the neigh-
borhood. It is sufficient, if it produces that, which is offen

sive to the senses, and which renders life and property uncomfortable.

In *Rhodes* v. *Dunbar*, 57 Pa. St. 274, it was held, that the courts have power to restrain noises, which disturb rest and prevent sleep.

In *Ross* v. *Butler*, 19 N. J. Eq. 294, it was held, that, when the prosecution of a business of itself lawful in the neighborhood of a dwelling-house renders the enjoyment of it materially uncomfortable by the smoke and cinders or noise or offensive odors produced by such business, although not in any degree injurious to health, the carrying on of such business there is a nuisance and will be restrained by injunction.

In *Broder* v. *Saillard*, 2 L. R. Ch'y Div. 692, it was held in a suit by the owner and occupier of a house against the occupier of an adjacent house complaining of noise from the defendant's stable and damp from an artificial mound, on which it stood, that the plaintiff was entitled to an injunction to prevent the defendant from keeping horses in his stable so as to be a nuisance; and that the defendant was also liable for not preventing the damp from going through the plaintiff's walls.

In *Inchbold* v. *Robinson*, 4 L. R. Ch'y App. Cas. 388, it appears, that a circus, which was performing near the dwelling, was enjoined on account of the noise. The performance in the evening lasted from about half past seven till half past ten. It was proved, that the noise of the music and shouting in the circus could be distinctly heard all over the plaintiff's house and was so loud, that it could be heard above the conversation in the dining room, though the windows and shutters were closed.

In *Crump* v. *Lambert*, 3 L. R. Eq. Cas. 409, it was held that smoke unaccompanied with noise or with noxious odors and noises alone, and offensive odors alone, although not injurious to health, may severally constitute a nuisance. The material question in all cases is, whether the annoyance produced is such, as materially interferes with the ordinary comfort of human existence.

Was there a nuisance in this case? It seems to me, there can be no doubt about it. I think, that the evidence before

the court, at the time the injunction was dissolved, of the noise produced by the skating in the rink was such, as ought to have prevented the dissolution of the injunction and secured its perpetuation. But the evidence before the court at the final hearing was such, as made it the imperative duty of the court to reinstate the injunction and make it perpetual. Mr. Sentz and wife and daughter residing in the house about thirty feet distant from the rink show clearly, that the noise of the skating and the noise from other sources in and about the rink very materially interfered with their comfort and the enjoyment of their home. This is positive testimony, and that against it is mostly negitive, and that, which is positive against it, is very weak. Mr. Broun tells us, that he was greatly disturbed in the Snyder residence on the other side, so much so, that he was driven from the house, and the house remained vacant for a long time. The noise produced by the skates is described as a rumbling sound, something like a train of cars crossing a covered bridge, and so loud as to very materially interfere with the comfort of those living near the rink. It can serve no good purpose to review the testimony at length; but it satisfies us, that before the rink was opened, it was a threatened nuisance, and that afterwards in its operation it became an actual nuisance. The evidence as to the crowds and the disturbance therefrom is very conflicting; and if the case stood on that evidence alone, the decrees would have to be affirmed. We base the propriety of the injunction on the noise alone.

There was an effort made by the answer to the original bill to show, that the injunction was procured, because the defendants were colored people, and some of the testimony tended in that direction. There is nothing in the record to show that a skating rink would be more obnoxious, if operated by colored people than if operated by white people. The colored people have the same right and no more to erect and operate a skating rink, that white people have. But every person, white or colored, has the right not to be disturbed in his house; he has the right to rest and quiet and not to be materially disturbed in his rest and enjoyment of home by loud noises. If A. C. Snyder, Sentz, Broun and Penn had

been the defendants and had erected and operated a skating rink, and the poorest colored family in Charleston had lived, where Sentz and Broun lived, they would be entitled to the protection of the law, and this Court would see to it, that the defendants should be enjoined from disturbing them in the quiet of their homes.

The decrees of the 9th of October, 1885, and January 19th, 1886, are respectively reversed with costs ; and the injunction originally granted is reinstated and made perpetual at the costs of the defendants below.

REVERSED.