# CHARLESTON.

POWELL *v.* BENTLEY & GERWIG FURNITURE CO.

Submitted January 31, 1891.—Decided March 7, 1891.

1. NUISANCE—NOISE OF MANUFACTORY.

The noise of a factory, which materially interferes with and impairs the ordinary physical comfort of human existence, may be treated as a nuisance. But the standard as to the effect must be the man of normal nervous sensibility and ordinary mode of living.

2. NUISANCE—INJUNCTION.

But such cases depend in a peculiar degree upon their own facts and surrounding circumstances; so that courts of equity should proceed with great caution in abating or restraining such factory by injunction, and not enjoin unless the fact of nuisance is made in some way to appear clearly beyond all ground of fair questioning.

*Van Winkle & Ambler* of counsel for appellants, cited:
57 Pa. St. 274; 78 Ky. 400; 10 Am. Rep. 669; 105 Pa.
St. 253; 33 Am. Rep. 325; Wood Nuis. § 671; Id. § 613;
Id. §§ 638, 639; 66 Am. Dec. 790; 28 Am. Rep. 378; 10
Am. Rep. 669; Tied. Lim. Pol. Pow. §§ 104, 122; Wood
Nuis. 641; 130 U. S. 620; 11 H. L. Cas. 642; Poll. Torts
271; 9 Chan. 705; 5 W. Va. 1; 56 Am. Rep. 581; 146
Mass. 349; 4 Am. St. Rep. 317, 320; 4 Am. St. Rep. 601;
12 Phila. 259; Thomp. Tri. §§ 1911, 1915; 133 Mass.
289; 136 Mass. 239; 43 Am. Rep. 521, 522, 526; 118 Pa.
St. 402; Wood Nuis. §§ 618, 633, 634; Add. Torts § 224;
20 Am. Rep. 575; 22 Am. L. Reg. 625; 1 High. Inj. §
745; Id. §§ 756, 781, 786; 23 Miss. 540; 106 U. S. 679;
50 Am. Rep. 112; Id. 119; Pom. Eq. Juris. § 817; Big.
Estopp. 661, 663; Id. 553, 565, 566; High Inj. § 741; Id.
§ 13.

*J. A. Hutchinson* of counsel for appellant cited:
2 Thomp. Tri. § 1911; L. R. 8 ch. 8–13; 29 W. Va. 48;
Wood Nuis. § 617, 618; Phill. Ev. 436; 9 N. J. Eq. 186;
146 Mass. 349; 52 How. Pr. 255; 4 Rob't (N. Y.) 449; 1
High. Inj. § 774; 8 Daly 113; 11 H. L. Cas. 650; 50 Md. 522;
113 Mass. 8; 8 Cush. 80; 101 Mass. 29; L. R. 4 ch. App.
388; Wood Nuis. 632, 634; Id. 617, 638; 26 Ga. 182; 18
Ill. 266; 133 Mass. 289; 22 N. J. Eq. 26; 13 Allen 95; 100
Mass. 76; L. R. 9 ch. App. 705; 50 Md. 516; 3 Grant Cas.
390; 43 Am. Rep. 519; 10 Am. Rep. 669; L. R. 11 Eq.
Cas. 338; 66 Am. Dec. 790; 47 N. H. 71; Cool. Torts 596,
598, 599; 50 Am. Rep. 112; 9 Wis. 158; 14 Wis. 479; 16
Wis. 661; 2 Barb. Ch'y Pr. § 608; 12 Allen 457; 14 Md.
444; 50 Am. Rep. 112; 146 Mass. 352, 353; 10 Monk Eng.
Rep. 588.

*O. Johnson* for appellee, cited:
31 W. Va. 137; 51 N. Y. 100; Wood Nuis. §§ 801, 802,
806, n. 1; 97 U. S. 317; 35 Am. Dec. 575; 97 U. S. 679;
37 Pa. St. 112; 56 Pa. St. 413; 78 Ky. 406; High Inj. §
786; 5 Metc. 8; 27 Tex. 304; 24 Ala. 130; 49 Me. 539;
14 Vt. 230; 8 Ind. 104; 51 N. Y. 300; 110 N. Y. 273;
Wood Nuis. § 806; 9 Watt. 254; 63 N. Y. 568; 19 W. Va.
439; 20 N. J. Eq. 201; 1 Robt. (N. Y.) 449; L. R. 3 Eq.

409; 23 Mich. 448; 70 Pa. St. 102; 31 Mich. 291; 108 U. S. 317; 2 N. Y. S. 245; 55 Conn. 31; 3 Barb. 157; 9 Paige 575; 31 L. T. (N. S.) 156; 1 DeM. & G. 616; 2 M. & C. 613; 4 K. & J. 528; L. R. 4 ch. 148; 3 Sumn. 189; Hopk. Ch'y 416; 4 B. & S. 600; 18 L. T. (N. S.) 49; 17 L. T. (N. S.) 220; L. R. S. Ch. 583; 4 B & S. 608; L. R. 4 Ch. 148; L. R. 1 Exch. 265; 7 L. T. (N. S.) 207; 1 Rolle Abr. 14; 1 Dall. 150; 13 Gray 146; 53 N. Y. 152; 3 Black. Comm. 216; 54 Am. Dec. 347; 38 Am. Dec. 567; 47 Am. Dec. 254; 97 Am. Dec. 654; 89 Am. Dec. 392; 79 Am. Dec. 444; 67 Am. Dec. 665; 81 Am. Dec. 573; 98 Am. Dec. 221; 81 Am. Dec. 588; 17 Am. Rep. 516; 63 N. Y. 568; 1 Burr. 337; Cool. Torts 712; 43 Am. Rep. 519; 133 Mass. 289; 13 Allen 95; 100 Mass. 76; Wood Nuis. § 601, 612, 617; 1 Allen 592; 4 C. E. Green 294; 9 N. J. Eq. 186; 9 Ired. 244; 3 Pa. St. 300; 33 Conn. 121; 1 H. & N. 34; 1 Stockt. 186; 4 Denio 311; 2 P. Wms. 266; 17 Tex. 489; 5 Barb. 79; 6 Barb. 313; 9 Eng. L. & Eq. 104; 29 W. Va. 48; 49 Am. Dec. 421; 42 Am. Rep. 534; 40 Am. Rep. 738; 20 Am. Rep. 63; 10 Am. Rep. 659; 9 Am. Dec. 181; 81 Am. Dec. 538; 53 Am. Dec. 730; Wood Nuis. § 611 *et seq.*

HOLT, JUDGE:

In the year 1888, Barna Powell, plaintiff below, brought his bill in the Circuit Court of Wood county, against the Bentley & Gerwig Furniture Company, a partnership, defendants below and appellants, to perpetually enjoin and restrain said company from the use of their furniture factory as a nuisance to plaintiff in the use and enjoyment of his lot and dwelling house thereon. Defendants filed a demurrer, which was overruled; then answered, and the plaintiff replied generally. The depositions of thirty eight witnesses were taken to be read on behalf of the plaintiff, and of twenty seven witnesses to be read on behalf of defendants. On the 12th of August, 1890, the cause came on to be heard, when the Circuit Court pronounced a final decree, by which defendants were perpetually enjoined and restrained from so operating their furniture factory, machines, engines *etc.*, as to produce loud,

disagreeable, annoying, and injurious noises, interfering with the ordinary use, physical comfort and enjoyment by plaintiff, his family and other occupants of his house, lot and premises. From this decree defendants have appealed.

The proof shows that on the 6th of June, 1889, plaintiff brought against defendants an action of trespass on the case for damages for the nuisance asked to be enjoined, which action at law was pending in the same court on the law side, when the decree complained of was pronounced.

HISTORY OF COMMON LAW NUISANCE: The common-law doctrine of nuisance is as old as the common-law itself. Our oldest law-writers treat of the subject. See citations from Glanville and Bracton in Bigelow, Lead. Cas. Torts. 462.

ITS FOUNDATION: It is founded on what we call the absolute rights of liberty and property. Each man has the right to that which he has made his own, and without control or diminution, save by the laws of the land. If each has it, all have it; so that it follows from this that each one must so use his property and rights as not to injure those of others. Each has his right for himself, and owes a corresponding duty to the other.

DEFINITION: Some definitions are too broad to be useful; some too narrow to be true. The violation of this duty is the best general description of a nuisance.

COMMON NUISANCE: A common nuisance affects the people at large, and is an offence against the State, but an action may be brought in his own name by any one who suffers damage peculiar in kind or degree beyond what is common to him and to others.

PRIVATE NUISANCE: A private nuisance affects one or more as private citizens, and not as a part of the public, and is ground for a civil suit only.

SUBJECT-MATTER: Generally it affects the use or enjoyment of real property, and, as we see, by the old definitions was confined to this; but modern law takes a wider range. It is closely related to the law of servitudes.

STATUTE LAW: Our statute law upon the subject relates to public nuisances, such as dams obstructing ordinary navigation or the passage of fish *etc.* (Code, c. 44); sale of

intoxicating liquors (Code, c. 32, s. 18); power of County Court to abate nuisances (Code, c. 39, s. 25); power of cities, towns and villages to abate, (Code, c. 47, s. 28,); power of justices of the peace (Code, c. 150, s. 20 c.).

In *Wingfield* v. *Crenshaw*, 4 Hen. & M. 474 (Chancellor TAYLOR) it was held that a court of equity ought not to interpose in the case of a nuisance, except where the law would not afford an immediate nor an adequate remedy before irreparable injury might be done. In *Miller* v. *Trueheart*, 4 Leigh, 569, plaintiff had secured judgment at law against owner of mill-dam which had been washed away, and which he was about to rebuild. It was held that the injunction should be granted, unless it appeared from the verdict of a jury, on an issue for that purpose, that the proposed expedient (to avoid the nuisance) would be effectual. *Amick* v. *Tharp*, 13 Gratt. 564, relates to flooding back-water. W. Va. cases on the subject are very few. In *Snyder* v. *Cabell*, 29 W. Va. 48 (1 S. E. Rep. 241) a skating-rink was restrained as a nuisance. This case is much relied on by plaintiff. *Medford* v. *Levy*, 31 W. Va. 649 (8 S. E. Rep. 302) holds that annoyances, which in themselves would not amount to a private nuisance, may become nuisances when done wantonly and maliciously, and I suppose the natural and ordinary use of property in so negligent a manner as to cause unnecessary harm and annoyance, not being reasonable, would be deemed a nuisance.

THE OLD COMMON-LAW REMEDIES BY ACTION: These were two: (1) *Quod permittat prosternere.* This was in the nature of a writ of right, and therefore subject to great delays. It commanded the defendant to permit the plaintiff to abate the nuisance, or show cause against the same; and plaintiff could have judgment to abate the nuisance, and for damages against the defendant. (2) An assize of nuisance, in which the sheriff was commanded to summon a jury to view the premises, and, if they found for the plaintiff, he had judgment to have the nuisance abated, and for damages. It is to be noticed that the jury were to view the premises. Both had long been out of use in Blackstone's day; with us they were never in use, as far as I know. The assize of nuisance lay only against the

wrongdoer himself, but not against the alienee of the tenement wherein the nuisance was situated. This was the immediate reason for making that equitable provision in Stat. Westm. 2, 13 Edw. I. c. 24. This was in the year 1285 (3 Bl. Comm. pp. 216, 222) and has been the occasion of our modern changes in common-law pleading. We see that in the assize of nuisance the jury were to view the premises; this may be done now in the case at law, at the request of either party. Code, c. 116, s. 30.)

MODERN REMEDIES: The right to abate: This is treated of by Bracton, who wrote six hundred and twenty eight years ago, and the remedy survives to the present time; but a party should not be advised to take the law into his own hands except in a case of great urgency, for he does so at his own risk and at a great hazard, should he be in the wrong, or go too far.

THINGS TO BE CONSIDERED IN DETERMINING WHAT IS A NUISANCE: Every man, as we have seen, has the exclusive dominion and the right to the full and exclusive enjoyment of his own property, to do with it as he pleases. His neighbor has the same right over his own property. Hence it follows as the duty of each to so use his own as not to injure that of the other, each one's duty qualifies his own right and creates a corresponding right in the other.

HARM WITHOUT LEGAL INJURY: But this duty must be taken with qualifications, for, in the nature of things and of society, it is not reasonable that every annoyance should constitute an injury such as the law will remedy or prevent. One may therefore make a reasonable use of his right, though it may create some annoyance or inconvenience to his neighbor. But, even in such case, an annoyance lawful in itself may become unlawful when done maliciously.

USEFUL OR NECESSARY TRADES: So, also, public policy and general convenience require that on this head something more shall be conceded to useful and beneficial work than to useless and idle amusements, but where this line of difference is to be drawn can only be determined by the facts of each particular case.

HOMES AND FACTORIES: According to our settled notions and habits, there are convenient places—one for the home,

one for the factory; but, as often happens, the two must be so near each other as to cause some inconvenience. The law can not take notice of such inconvenience, if slight or reasonable, all things considered, but applies the common-sense doctrine that the parties must give and take, live and let live; for here extreme rights are not enforceable rights—at any rate, not by injunction. See Bish. Cont. § 418, and cases cited.

CONVENIENT PLACE: But the term "convenient place" does not mean the one best for the profit and convenience of the owner of the offensive factory, but the one where.it shall cause no actionable injury to others. One nuisance does not justify another; still it may be taken as one of the surrounding circumstances to be considered in determining whether or not the other be a nuisance.

IDIOSYNCRACIES OF THE PERSON ANNOYED: In fixing the standard by which to measure what shall be deemed a nuisance in the given case, the nature of the man offended, as well as the nature of the thing offending, must be considered. Daniel Boone, Kentucky's famous pioneer, represented the county of Kanawha in the Virginia legislature about one hundred years ago, and soon after left the county,in part, it is said, because the throng of incomers had become annoying. Some families, it is said, think of re-establishing their old home on lower Broadway. Leaving these matters for local history, past and to come, to look after, we know that our people, in a steadily increasing ratio, are crowding into the centers of population, seeking the conveniences, comforts and amenities of town life, notwithstanding its noise and bustle and other annoyances. For such standard it will not do to take the man who, by reason of his sensitive nature, inborn or acquired, or by reason of his habits or mode of living, is supersensitive to the annoyance complained of; nor, on the other hand, are we to take one who, by nature or habit, is abnormally insensible to such things. The idiosyncracies or peculiar habits or modes of living of neither class furnish the proper test; and this, not because the oversensitive man or man in ill health has less right, but because it is impossible in practice for the law to extend to him exceptional immunity or protection. There-

fore we must take as our standard the normal man; the one of ordinary sensibility; of ordinary habits of living; the plain, well-to-do people, who make up the great mass of our busy world. If this should lead to hardship in particular cases, such as sickness, practical convenience makes it impossible to have any other criterion. In such cases we must appeal to the humanity and good-will of our neighbor, rather than to any supposed enforceable right of our own.

So far the subject has been discussed on grounds common to a suit at law for damages, and a suit in equity to forbid, abate or restrain. But these remedies differ not less in the mode of relief than in effectiveness and in other important particulars. In the suit at law for damages, if the case is made out, damages, according to the injury proven, are awarded as matter of right, and not of discretion. But often this is only a half-way remedy, leading sometimes to endless litigation and to irreparable mischief. So that the remedy by injunction is sometimes the only one at all effective or complete, forbidding, preventing, stopping, abating the nuisance, exercising such restraint, and no more, as the exigencies of the particular case demand. And now, since the power of man over the elements and forces of nature have become and are becoming so great and so far-reaching, this remedy grows in frequency and indispensability. Yet by reason in part of its very completeness and effectiveness, it is exercised, especially in cases like this, with great caution, and only after the fact of nuisance has been put beyond all ground for fair questioning. For although a court of equity in such cases follows precedent, and goes by rule, as far as it can, yet it follows its own rules— and among them is the one that to abate or restrain in case of nuisance is not a matter of strict right, but of orderly and reasonable discretion, according to the right of the particular case—and hence will refuse relief, and send the party to a court of law, when damages would be a fairer approximation to common justice, because to silence a useful and costly factory is often a matter of serious moment to the state and town, as well as to the owner.

The matter here complained of as a nuisance is the noise of a furniture-factory at the corner of Sixth and Ann

streets, causing personal annoyance to plaintiff and his family at his home opposite, across Ann street, eighty feet from the factory, and thus indirectly impairing the value of his property. In such cases the question is, in its very nature, one of degree, and the evidence by which to determine it is matter of opinion, based on experience and observation of the thing itself. The rule to guide us in such cases is that the noise must be such as materially to interfere with and impair the ordinary comfort of existence on the part of ordinary people. *Snyder* v. *Cabell,* 29 W. Va. 48 (1 S. E. Rep. 241); *Baltimore & P. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317 (2 Sup. Ct. Rep. 719.) See, also, *Smelting Co.* v. *Tipping,* 11 H. L. Cas. 642; *Walter* v. *Selfe,* 4 De Gex & S. 315; *Crump* v. *Lambert,* L. R. 3 Eq. 409 ; *Gaunt* v. *Fynney,* L. R. 8 Ch. 8; and the recent cases, *Bohan* v. *Gas-Light Co.* 25 N. E. Rep. 246; and on public nuisance, *People* v. *Lead-Works* 46 N. W. Rep. 735; *Wiley* v. *Elwood* 25 N. E. Rep. 570; and notes in 9 Lawy. Rep. Ann., Jan. 13, 1891, p. 711 (*Bohan* v. *Gas-Light Co.*)

FACTS OF THE CASE: Six hundred pages of this record are taken up with the testimony of sixty five witnesses—thirty eight for plaintiff, twenty seven for defendants—on the question of nuisance or no nuisance, with about three thousand four hundred questions asked and answered. It is usual to observe or to fix some limit in the number of witnesses to be examined on such questions. In the view we take of this case it would answer no useful purpose to go into the evidence in detail. We can best express our view by comparing the facts of this case with the facts in the case of *Snyder* v. *Cabell,* 29 W. Va. 48 (1 S. E. Rep. 241) as that case is relied on and made the subject of extended comment on both sides.

In that case the thing complained of as a nuisance was in the main noise, as it is here. There it was the noise of a skating rink, an unnecessary amusement; here it is the noise of a furniture factory, a trade of public utility, as well, as a private benefit, costing more than thirty thousand dollars, and employing more than sixty people. That was located in a part of the town theretofore devoted for the most part to residences; here it was on a street occupied

overhead by the approach of the Baltimore & Ohio Railway to its bridge across the Ohio at Parkersburg, devoted to the noises of running trains, already paid for to be used for that purpose, and for that reason not generally highly valued as a place for homes. The factory was well equipped and well conducted, with as little of the noise and hum of the machinery as possible in such a work; the noise stopping at six in the evening and not starting again until seven in the morning. In the rink the noise disturbed rest and sleep, continuing far into the night. The three families complaining of the noise of the rink, we may infer, were people of normal nervous sensibility to noise. Here the plaintiff and his principal witnesses, living near the factory, seem to be, by reason of ill health or by nature, rather supersensitive to such things.

On the question of nuisance, the evidence is conflicting; at any rate the plaintiff does not put his case high and dry, above all ground of fair questioning. There is enough perhaps for the chancellor to have directed an issue. But this issue the plaintiff by his suit at law has already brought on and made up. Under such a conflict of evidence, the suit at law should have been tried first. The finding on such a question of fact of twelve good and lawful men, who, if deemed proper, may see and hear the thing for themselves, is still greatly relied on by the court. By such course we would avoid the possibility or likelihood of the awkward predicament that now confronts us, of a court of equity having silenced as a nuisance a factory of great cost and of general utility, which the jury in the suit at law should afterwards find to be, all things considered, no nuisance at all. Besides, if the jury should find it to be a nuisance by giving substantial damages, the chancellor would then have safer ground for his decree.

The decrees of the 12th and 14th of August, 1890, must therefore be reversed, and the cause remanded; the further hearing to abide the determination of the issue of nuisance or no nuisance in the suit at law, or to be demurred to by plaintiff, according as he may be advised.

Reversed, Remanded.