# CHARLESTON.

McGregor *et al. v.* Camden *et al.*

Submitted June 17, 1899—Decided December 2, 1899.

1. Nuisances—*Oil and Gas Wells.*
   Oil and gas wells are not nuisances per se. Whether they are nuisances to a dwelling house and its appurtenances depends on their location, capacity, and management. (p. 197).

2. Oil and Gas Well—*Abatable Nuisance.*
   When such a well has such capacity, management, and location with regard to a dwelling house and its appurtenances as to materially diminish the value thereof as a dwelling, and seriously interfere with its ordinary comfort and enjoyment, it is an abatable nuisance. (p. 196).

3. Unlawful Operation—*Enjoined.*
   If there is any way that such well can be operated so as not to make it such nuisance, only the unlawful operation thereof will be enjoined. (p. 200).

Appeal from Circuit Court, Ritchie County.

Action by Matilda McGregor and others against Thomas B. Camden and others. From a decree dismissing the bill, plaintiffs appeal.

*Reversed.*

Hall & Hall and B. F. Ayers, for appellants.

Camden & Moss, for appellees.

Dent, President,

Matilda McGregor et al. against Thomas B. Camden et al., from the circuit court of Ritchie County; being an appeal from a decree dismissing a bill praying an injunction against an oil and gas well. The facts are as follows: The plaintiffs are the owners of a valuable lot and dwelling house and appurtenances, alleged to be worth about ten thousand dollars, situated in the town of Cairo, said county. The lot is highly improved for the purposes for which it had been used for the past twenty-five years, to wit, as a

home for the McGregor family. Mrs. McGregor now occupies the same as a life tenant, while the remainder is in her children, joint plaintiffs in this suit, but who have married and live elsewhere. Adjacent to this property is another lot eighty-five by one hundred and fifteen and a half feet, on which certain of the defendants began sinking an oil well in the year 1896, within seventy feet of the dwelling house, and about fifty feet of the line of the lot, towards such house, and fifteen feet in another direction to the McGregor land. The plaintiffs obtained a temporary injunction in its early beginning to restrain the sinking of the well so close to their property. This injunction was afterwards modified so as to permit the defendants to proceed with their well on giving bond in the penalty of ten thousand dollars, good for the period of forty days. The plaintiffs then filed an amended bill, making new parties, and amending the allegations in some respects, and obtained a virtual reinstatement of their injunction, to be affective after the expiration of the forty day bond limit. Some of the defendants tendered answers, to which the plaintiffs excepted. Some of the defendants have as yet filed no answers. On the 26th day of January, 1897, the following vacation order was entered of record, to-wit: "Notice having been given by the defendant J. H. Kelly of a motion to dissolve the injunctions and orders of injunction made in this cause on the original and amended and supplemental bills, to be heard on January 14, 1897, and the plaintiffs having given notice of a motion to reinstate the injunction on the original bill filed in this case, which notice was accepted by B. M. Ambler, of counsel, on behalf of J. H. Kelly and others, owners of the lease covering the lot on which is located the well in controversy, which motions were noticed to be heard at Harrisville on the 14th day of January, 1897, and the parties having by a stipulation in writing agreed that the argument on the questions presented should be heard before the undersigned judge, for greater convenience, at Parkersburg, at 306 Juliana street, that stipulation is ordered to be made part of the record, and to be copied on the chancery order book as a part of this order; and the motions aforesaid coming on to be heard upon the orders and proceedings heretofore had,

and upon the amended and supplemental bill, and upon certain depositions taken by the plaintiffs, and upon the demurrer and answer of the defendant J. H. Kelly to the amended and supplemental bill, and upon exceptions to the answers of J. H. Kelly and others indorsed thereon by plaintiffs, and upon the motions to dissolve said orders of injunction at the instance of the defendants, and to reinstate the injunction of the original bill, and the court having heard the arguments of the counsel, according to the stipulation, on the matters arising in the record, it is now, on this 22d day of January, 1897, at New Martinsville, and within the circuit of which the undersigned is judge, ordered that the order of injunction entered in this cause upon the amended bill by the Hon. Thos. P. Jacobs, late judge of said circuit, be, and the same is hereby, dissolved and set aside, and the court refuses to reinstate the injunction on the original bill, and overrules the exceptions to the answer of J. H. Kelly and others, and that the defendants be, and are hereby, relieved from all orders of injunction heretofore entered in the cause.   Romeo H. Freer, Judge 4th Judicial Circuit." And on the 9th day of March, 1897, the bills were dismissed at the costs of the plaintiffs.

There are numerous technical objections urged in this cause that are hardly worthy of consideration. One is that the original bill was not properly verified. Section 3, chapter 133, Code, provides that "no injunction shall be awarded in vacation nor in court in a case not ready for hearing, unless the court or judge be satisfied by affidavit or otherwise of the plaintiff's equity." Whatever satisfies the judge of plaintiff's equity is sufficient, whether the bill be sworn to or not. The judge being satisfied, no one else can object. Such objection after the injunction is granted can amount to nothing but a mere legal quibble. The main facts on which the bill is founded are not even denied the only controversy between the parties being the question as to whether a gas and oil well can be so sunk and operated as not to be a nuisance to a dwelling house and lot within seventy feet of it. The bare statement of the case would apparently make it prima facie a nuisance. The noise and rumbling of steam-running machinery at all hours, both day and night, until they become accus-

tomed to it, would be a great source of annoyance to most persons; and then the inflammable, destructive, and dangerous character of both oil and natural gas issuing from a producing well, and discharged in the air or stored in quantities, are matters of common understanding; and when situated so near a dwelling house and grounds as to become an impending and threatening danger to the property and inmates thereof, so the proper enjoyment of such property is greatly interferred with, if not entirely destroyed, a court of equity is justified in abating the same as a nuisance, unless it appears that such well can be operated without danger to such dwelling house. Nor can this matter be determined by waiting until the property is actually destroyed. Such delay would be in its nature criminal. A lawful business cannot be a nuisance per se, but from its surrounding places and circumstances, or the manner in which it is conducted, it may become a nuisance. *Manufacturing Co.* v. *Patterson,* 148 Ind. 414, 47 N. E. 2, 37 L. R. A. 381; *Powell* v. *Furniture Co.,* 34 W. Va. 804, (12 S. E. 1085.), 12 L. R. A. 53; *Kinney* v. *Keopmaun,* (Ala.) 22 South. 593, 37 L. R. A. 497; *Wilson* v. *Manufacturing Co.* 40 W. Va. 413, (21 S. E. 1035). The last case refers to the keeping and manufacturing of powder near a public place. In the case of *McAndrews,* v. *Collerd,* 42 N. J. Law, 189, it is held that "keeping powder, nitroglycerine, or other explosive substance in large quantities in the vicinity of a dwelling house or other places of business is a nuisance per se, and may be abated by action at law or bill in equity." This is quoted approvingly by Judge Brannon in the case of *Wilson* v. *Manufacturing Co.,* above cited. In the case of *Cook* v. *Anderson,* 85 Ala. 99, 4 South. 713, it was held that "keeping explosive substances in large quanties in the vicinity of dwelling houses or places of business is ordinarily regarded a nuisance,—whether or not being dependent upon the locality, the quantity, and surrounding circumstances." If the keeping of such substances, which necessarily include oil and natural gas, near a dwelling house or place of business, may be a nuisance what may be said of boring into the earth, and turning them loose from their safe confinement, and allowing them to spread ad libitum over and through a dwelling house?

Natural gas is known to be easily ignitable, and highly explosive, and to be very dangerous, owing to its stealthy and rapid approach. Naphtha gas, arising from crude petroleum oil, is said to be more explosive than powder. In this case we have the natural gas from the well, petroleum, and the gas therefrom in its storage tank, all to deal with as dangerous and threatening to plaintiffs' property. As the drilling has ceased, the noise attending it has, likewise, except that arising from the pumping operation, about which nothing is alleged or proven.

The bills, on demurrer, make out a strong case of nuisance against the defendants, and therefore the demurrer should have been overruled. They do not allege, however, that this well cannot be operated without danger or loss to plaintiffs' property, although there are allegations from which this might be implied. Nor is this a matter of common knowledge, as there is little, if any, human experience to be had in this direction, as but few oil wells have ever been located in so close proximity to a valuable home property. The evidence of the most expert and competent witnesses could alone shed light on this subject. The court cannot say without such evidence that the well could be operated without such danger and loss. The drilling of oil and gas wells is not only a legitimate business, but public policy upholds it, as being for the general welfare. *Uhl* v. *Railroad Co.* (decided at this term) (34 S. E. 934). Yet public policy itself is qualified by the constitutional provision that private property shall not be taken or damaged for public use without just compensation. So public policy will not justify the maintenance of an oil well that is a nuisance to private property. The defendant Kelly, who appears to answer for all the defendants, admits many of the allegations of the bill, denies that it has so far damaged the plaintiffs' property to any considerable extent, alleges that the well "is a paying well, and is now being operated with all the prudence, care, and skill known in the business," but does not claim that such well can be so operated as to prevent any appreciable danger to plaintiff's property from fire and gas. The proofs appear to establish the fact that the well and tank are an impending evil, continually hanging over the plaintiffs' property,

—as much so as the storage or manufacture of powder in quantities could possibly be,—and that it is in danger of destruction by fire by day and by night. There are no waterworks or fire protection of any kind, and if fire once got under headway it would be impossible to stop it until stayed by the entire destruction of all plaintiffs' buildings, and, if in the night-time, probably life itself. It is a hardship to stop the pursuit of any lawful business, and equity does not do it except in a plain case. If the business is merely for pecuniary profit, and threatens loss to another which cannot be compensated in damages, such as the destruction of an old, established home, the speculator has no right to complain because he is restrained from doing acts lawful in themselves, but which become unlawful because they ruthlessly interfere with the long-established rights of his neighbor. He must use his own without damaging his neighbor.

From the vacation order recited, it is hard to tell on just what state of the pleadings the circuit court decided this case. It was submitted on bill and demurrer thereto, answers of J. H. Kelly tendered, and exceptions thereto, affidavits and depositions, and motion to dissolve the injunction. If the judge regarded the answers as though replied to generally, and read the plaintiffs' depositions, a good *prima facie* case for injunction was made out, and the injunction should have been continued to the hearing; but, if he regarded the answers in without replication, then, in so far as they controvert the bill, they must be taken as true, and would be decisive of the case, for the depositions could not be considered in opposition to the admission of the truth of the answer. 2 Tuck. Bl. Comm. 479. It is there said: "If the plaintiff does not reply to the answer, but the cause is set down for hearing upon bill and answer, without replication, the answer is to be taken in all things as true." "In injunction cases, as we have said, the defendant may file his answer the day before the commencement of the term, and move even the next day for dissolution. Here the motion may come on without replication, but the answer is to be taken and considered as if there was a replication." In this case the plaintiffs never had an opportunity to reply to the answers, for the judge

acted upon them at the same time he overruled the excep-
tions thereto, all of which was done in vacation, in the ab-
sence of both plaintiffs and defendants.    It must therefore
be presumed that the judge considered such answers as
though put in issue by general replication.    Looking at it
in this light, the only proofs in the case are those taken by
the plaintiffs.    From these it appears that the defendants'
oil well has already scattered oil and salt water and gas
over and through plaintiffs' premises; that she has already
had to put out all her fires twice on account of the danger
from gas (once being notified so to do by defendants' em-
ployes), and these things are liable to occur again at any
time; that the defendants are storing oil from the well in an
ordinary oil tank within eighty feet of such dwelling; and
that the danger of fire therefrom is imminent and threat-
ening.    The plaintiffs could hardly prove any more with-
out waiting until their buildings and property were de-
stroyed, and then bring that in as proof positive that a
nuisance once existed, but this would be too late for relief
by injunction.    Plaintiffs' proofs undoubtedly made a
prima facie case of nuisance, which entitled them to have
the injunction continued until a final hearing.

Attention is called to the use of the phrase "if any," so
often repeated in the bill.    This refers solely to the salt
water, and is used for the reason that plaintiffs did not
know whether salt water was or would be present or not in
the output of the well.    There is much immaterial matter
contained in the answers, which rather prejudice the de-
fendants in a court of equity than otherwise.    They claim
that the well is necessary to secure the oil and gas under
the eighty-five by one hundred and fifteen and a half feet
of ground, worth about four thousand dollars.    That this
is false, the defendants established themselves, by locating
their well within fifteen feet of the line of the McGregor
land.    Nor was any such attempted misleading allegation
necessary, for the reason that, while oil and gas in place
are regarded as real estate, yet, being fugitive in nature,
they are not the absolute property of the landowner until
he reduces them to possession, and they become the prop-
erty of him who first lawfully makes this reduction.    They
are the property of the landowner in the earth, just as the

air and water are his above the earth. And his neighbor has just the same right to drill an oil or gas well as he has to dig for water or erect a windmill on his own land. *Uhl* v. *Railroad Co.*, above cited. There are two questions of fact to be finally decided in this case: First. Is this oil well, as now operated, such a nuisance to the plaintiffs' property as to materially diminish the value thereof as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it? *Adams* v. *Michael*, 38 Md. 123. The burden of establishing this is on the plaintiffs. Second. Is there any way in which this well can be operated so as not to materially diminish the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it? If there is, equity will permit it to be so operated, but enjoin the continuance of the unlawful operation. As to these questions, the court at the request of either party, or on its own motion, may direct an issue to be tried by a jury. Section 4, chapter 131, Code; *Powell* v. *Furniture Co.*, 34 W. Va. 804, (12 S. E. 1085), 12 L. R. A. 53. The principles involved in this case are too important, both to the public and property owners, to be disposed of without due hearing and careful consideration. The final decree dismissing the bills and the order dissolving the injunction are reversed, and the injunction reinstated; and the case is remanded to the circuit court for completion of the pleadings, and a final hearing and disposition on the merits according to the rules and principles governing courts of equity.

*Reversed.*