MEEKS v. WOOD.

[No. 9,446.    Filed February 6, 1918.]

1. NUISANCE.—*Elements.*—*Use of Property.*—Every man has the exclusive dominion and right to the free enjoyment of his own property, and, though it is his duty to use it so as not to injure the property of others, this duty must be taken with some qualifications, for every annoyance does not constitute such an injury as the law will remedy or prevent, and one may, therefore, make a reasonable use of his right, though its exercise may create some annoyance or inconvenience to his neighbor, but, even in such a case, an annoyance lawful in itself may become unlawful when done maliciously.  p. 597.

2. NUISANCE.—*Elements.*—*Nature and Extent of Injury.*—In determining what constitutes a nuisance, the nature and characteristics of the person claimed to have been annoyed, as well as the nature of the instrumentality causing the annoyance, must be considered, and the question is whether the nuisance will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities and ordinary tastes and habits and, under the circumstances, unreasonable and in derogation of the rights of the complaining party.  p. 598.

3. NUISANCE.—*Elements.*—*Nature and Extent of Injury.*—*Evidence.*—*Sufficiency.*—In an action to enjoin as a nuisance the use of a "barker" or whistle placed on the exhaust pipe of a gas engine in order to keep the operator informed as to when the engine was running, evidence showing, in substance, that, although the "barker" gave out forty or fifty loud and shrill sounds every minute, which continued day and night, those living in the immediate vicinity became accustomed to the noise shortly after the "barker" was installed and were not thereafter disturbed by it, that plaintiff was a man of nervous temperament and abnormally sensitive to the noises complained of, and that he and those occupying his house with him complained of the same physical conditions and ailments when the engine was not being operated as it was claimed were produced by the use of the "barker," was sufficient to sustain the trial court's conclusion that the sounds complained of were not of such a character as should materially interfere with and affect the ordinary comforts of living of normally constituted people.  p. 598.

From Randolph Circuit Court; *Theodore Shockney,* Judge.

Action by Chaney F. Meeks against Martin F. Wood. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Walter G. Parry, Frederick F. McClellan, Donald D. Hensel* and *Leonidas A. Guthrie,* for appellant.

*Carl Thompson, A. L. Nichols, A. L. Bales* and *J. W. Macey,* for appellee.

IBACH, C. J.—This was an action brought by appellant against appellee to perpetually enjoin him from using a "barker" in the conduct of his business of operating an oil well on his farm which adjoins appellant's farm. There was a trial by the court and judgment for the defendant. Appellant's motion for a new trial was overruled, and such ruling is assigned as error and relied on for reversal.

The barker is charged to be a whistle placed on the exhaust pipe of a gas engine which is used to pump oil from the well, and it is further charged that by the use of the barker loud and shrill sounds were produced, which continued both day and night and could be heard for a distance of two or three miles; that they were especially noisy and disturbing in and about appellant's house and premises, where they were so loud and shrill that appellant and his family were made sick and nervous, and they could not sleep; that such noises impaired their eating, interfered with their work, impaired the comfortable enjoyment of appellant's home, and also depreciated the value of his farm. In short, it was a suit to enjoin and abate a nuisance.

The statute (§291 Burns 1914, §289 R. S. 1881) provides: "That whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with

the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.''

There is some evidence of the existence of the acts complained of, but there is a conflict as to whether they are such as come within the provisions of the act, *supra*. There is much evidence on the part of witnesses living in the immediate neighborhood that they were not awakened by the barker, nor disturbed by it. Some testified that the noise did disturb them somewhat when the barker was first put in use, but that they had become used to it and were no longer affected by it. In fact, this is the character of all the testimony, except that of appellant and those occupying his house with him. And as to them there is evidence tending to show that they were complaining of the same physical conditions and ailments when the well was not being operated as are now claimed were produced by the use of the barker. There is some evidence from which it could be reasonably inferred that appellant was a man of nervous temperament and sensitive to things which were in any degree annoying or disturbing, especially to noises of the character complained of. In short, there was some evidence tending to show that appellant was not a person of ordinary sensibilities and from which the court might readily conclude that he was abnormal in this respect. It also appears from the evidence that the use made of appellee's land was not different from the use made of other lands in the immediate vicinity, as appellee was at that time only one of several farmers in the same locality who were developing their lands into oil fields, and the others were using the same device, appellee's well being nearer to appellant than the others. Appellee lived about ninety-eight rods from the well and the barker was placed on the exhaust, and when the engine was running gave out forty or

fifty distinct sounds every minute. In this way appellee was kept informed both by day and by night, when the engine was pumping without keeping a workman at the engine constantly, as the stopping of the noise of the barker would of itself indicate to the operator that the engine had stopped.

Under the facts thus detailed it is for us to decide whether the court was right in deciding that the amount of annoyance, under all the facts

1. and circumstances, did not constitute a nuisance within the provisions of the statute, *supra.* The law is well understood that every man has the exclusive dominion and right to the free enjoyment of his own property to use it as he pleases, and that his neighbor enjoys the same rights and privileges with his property; consequently it is the duty of each to so use his own as not to injure that of the other. This duty, however, must be taken with some qualifications, for as it has been held: "In the nature of things and of society, it is not reasonable that every annoyance should constitute an injury such as the law will remedy or prevent. One may therefore make a reasonable use of his right, though it may create some annoyance or inconvenience to his neighbor. But even in such case, an annoyance lawful in itself may become unlawful when done maliciously. * * * According to our settled notions and habits, there are convenient places—one for the home, one for the factory; but, as often happens, the two must be so near each other as to cause some inconvenience. The law cannot take notice of such inconvenience, if slight or reasonable, all things considered, but applies the common-sense doctrine that the parties must give and take, live and let live; for here extreme rights are not enforceable rights—at any rate, not by injunction." *Powell* v. *Bentley, etc.,*

*Furniture Co.* (1891), 34 W. Va. 804, 809, 12 S. E. 1085, 1087, 12 L. R. A. 54, 55.

There is another element to be taken into consideration in determining what shall constitute a nuisance, and that is the nature and characteristics of
2. the person claimed to have been annoyed, as well as the nature of the instrumentality causing the annoyance. As was said in a well-considered case: "In all such cases, the question is, whether the nuisance complained of, will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of *ordinary sensibilities,* and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant." (Our italics.) *Dittman* v. *Repp* (1878), 50 Md. 516, 33 Am. Rep. 325; *Wade* v. *Miller* (1905), 188 Mass. 6, 73 N. E. 849, 69 L. R. A. 820; *Rose* v. *Butler* (1868), 19 N. J. Eq. 294, 97 Am. Dec. 654.

We have indicated the character of the evidence produced at the trial and the court has concluded therefrom that the noise complained of was not
3. of such a character as should materially interfere with and affect the ordinary comforts of living on the part of normally constituted people. The trial court was fully warranted by the evidence in reaching such conclusion. The decision of the trial court is therefore sustained by sufficient evidence, and is not contrary to law.

Judgment affirmed.

Caldwell, J., not participating.

Note.—Reported in 118 N. E. 591. Nuisance :noise with or without vibration incident to industrial business, 17 L. R. A. (N. S.) 287, 44 L. R. A. (N. S.) 236; what will be enjoined as interference with comfortable enjoyment of real property, 10 Am. Rep. 674. See under (2, 3) 29 Cyc 1156, 1157, 1192.