## Chesapeake & Ohio Railway Company v. Clifton.

(Decided February 20, 1931.)

BROWNING & REED, KIRK, KIRK & WELLS and COMBS & COMBS for appellant.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Chesapeake & Ohio Railway Company, owns and operates a railroad through portions of Floyd county, the right of way of which is 100 feet wide, and a portion of it, upon which is located the railway track, is near the Big Sandy river. Between that stream and the right of way the appellee and plaintiff below, Willie Clifton, owns a small lot containing less than half an acre, upon one end of which is his residence, and the other one joins defendant's right of way. From the Big Sandy river runs a slough or swag, the far end of which occupies a portion of the rear of plaintiff's lot next to defendant's right of way, and into it flows a small natural stream that drains the hillside on the opposite side of the right of way and railroad track, the stream running across the former but under the latter. When the track was originally constructed, a concrete culvert of proper dimensions was put under it in the bed of that stream, and which it is admitted was sufficient to take care of all the flowing water. In 1923 defendant constructed a passing track on that portion of the unoccupied right of way lying next to plaintiff's lot, and the culvert was then extended the same dimensions near to or upon the line between plaintiff's lot and defendant's right of way, and from that point a ditch was dug 15 or 20 feet long to the original natural channel of the small stream, and which it is not disputed in this case was large enough at the time to take care of the water. Along the sloping side or bank of the swag or slough on plaintiff's lot, and not far from his resi-

dence, he had a well 26 feet deep which furnished water for his domestic purposes.

On August 28, 1928, plaintiff filed this action against defendant in the Floyd circuit court to recover $300 damages to the rear portion of his lot because of an alleged diverting of the water from the natural branch and causing it to flow into the slough or swag on the rear end of plaintiff's lot and damaging it to the amount claimed in the petition. He later amended his petition in which he sought to recover damages in a similar amount for the destruction of his well that he alleged had been produced by the same cause. It was also averred in the amendment that the injuries for which damages were sought, as well as the cause thereof, were temporary and not permanent. Defendant put in issue the material averments of the petition by which it was sought to be made liable, and following pleadings made the issues. Upon trial there was a verdict in favor of plaintiff for $250 damages to his lot and $100 damages to his well upon which judgment was rendered, and defendant's motion for a new trial having been overruled, it filed a copy of the record in this court with a motion for an appeal.

The negligence of which plaintiff complains consists entirely in defendant permitting the ditch from the mouth of the culvert, as extended in 1923 to the old or natural branch, of some 20 feet or perhaps less in length, to become filled with dirt and debris which caused the water flowing in the branch through the culvert to be precipitated on the rear end of plaintiff's lot; but it was shown that the complained of obstruction could have been remedied by the expenditure of an amount greatly less than the recovered damages, and, of course, such obstruction was temporary and not permanent. Notwithstanding that fact, plus the additional one that planitiff in his amended petition elected to base his cause of action on temporary causes and not permanent ones, the court permitted plaintiff to introduce evidence over defendant's objection to prove the difference in the value of plaintiff's lot after the alleged negligent overflowing, and its value before that time, which is the rule applicable to permanent structures, but which under the condition of this record was most highly prejudicial. The measure of plaintiff's damages, if any, as frequently held by this

court in cases where the cause was temporary, is the difference between the rental value of the property, or between the value of its use before and after the negligent interference complained of, and which is so thoroughly established in this jurisdiction as not to require the citation of cases in support of it, though two comparatively recent ones are, Honaker v. Chesapeake & Ohio R. R. Co., 209 Ky. 576, 273 S. W. 81, and City of Pikeville v. Riddle, 200 Ky. 395, 255 S. W. 63, in which others to the same effect are cited. The court also erred in giving an instruction, to which defendant objected and excepted, submitting to the jury the right of plaintiff to recover for injuries produced by a permanent cause, since he had expressly abandoned all right of action for such damages, if indeed he ever possessed any under the facts of the case.

In describing the condition of the water in his well, and which he attributed in his petition to the dereliction of defendant as complained of therein, plaintiff said: ''it looks kind of bluish looking color, and just kindly like you have seen swamp water, just great long strings and things through it.'' He admitted that the alleged overflow of which he complained did not come nearer than 15 feet on the side of the slope of the swag to the level of his well located higher up, and necessarily, if such overflow injured or damaged his well at all, it was by seepage, and which it requires no proof to show would require some considerable time for the standing of the water for it to be so done, while the overflows of which he complained were infrequent and the standing of the water of each was of short duration. Neither he nor any of his witnesses testified as experts on the seepage of water through the soil of the nature and character of his lot, and their testimony at best was a bare surmise without supporting facts, and which is further weakened from the proven and undisputed fact that back water from the Big Sandy river at times, not only filled the portion of the slough or swag on plaintiff's lot, but, in March preceding the trial, such backwater got so high as to entirely cover up the well and, of course, fill it to the top, and from whcih fact it is much more reasonable to believe that ''great long strings and things'' would get into the water in the well than that they would seep through the soil.

Under the evidence with reference to the damage to the well as we have so briefly outlined it, we have concluded that the court erred in submitting the issue as to any damages to it produced by the alleged dereliction of defendant, since such evidence is not sufficient to prove that the overflow from the culvert was the proximate cause of the contamination of the water in the well. Moreover, it will be remembered that the well was only 26 feet deep and cost about $25 when dug. Plaintiff admitted that he could sink a new one for not exceeding $2 per lineal foot, and, if the negligence of defendant had been proven to be the proximate cause of the alleged injury to the well, it then would have been the duty of plaintiff to minimize his damages by sinking another well, which could be done for about one-seventh of the amount of the verdict, or one-half of the returned damages to the well; and the same remark is applicable to the stopping of the ditch hereinbefore referred to, if defendant had sought reliance on that rule. We are also of the opinion that the verdict for $250 as damages to the lot was excessive under the proof.

No other questions are passed on; but, for the reasons stated, the motion for the appeal is sustained, and the appeal is granted, and the judgment is reversed, with directions to grant the new trial, and for proceedings consistent herewith.