# City of Covington v. McKinney et al.

(Decided March 10, 1936).

132

RALPH P. RICH for appellant.

FRANK V. BENTON and M. L. HARBESON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

To recover damages to his residence, its contents, and the yard to his residence, of the city of Covington, caused by the city maintaining inadequate ditches on its premises and permitting the same to become stopped up, thereby causing the water of ordinary rainfall, flowing from its premises, to be accelerated and concentrated onto their premises, Claude and Anna McKinney brought this action. On a trial before a jury a verdict of $1,000 was returned in their favor on which a judgment was entered, and from which this appeal is prosecuted.

For their cause of action they set forth the metes and bounds of the lot on which their residence is situated and describe its location relative to the land of the city on which it maintains reservoirs for the purpose of furnishing the inhabitants of the city with water. They allege that the land on which the reservoirs are located lies in the rear of theirs and slopes toward it. The city had constructed and maintained walled ditches to collect and drain the surface water and sewage from its land; one, immediately in the rear of their residence; another, on their premises, under the dwelling. The basis of their recovery is, the ditches were inadequate to carry the surface water collected therein from the city's premises and the city had permitted them to become stopped up, thereby causing an overflow of their premises, during ordinary rains. They confine their recovery to rainfall on certain dates during five years next before the commencement of the action. As a defense the city traversed the allegations of the petition as amended and alleged that the water which overflowed the McKinneys' premises was caused by the construction of the south side

of the Alexandria Turnpike immediately in front of the McKinneys' property, where a fill in the roadway was made over and across a deep ravine, a natural drainage and direct outlet for the water entering out of the south end of the culvert under the surface of the Alexandria Turnpike; also, the construction on the north side of the Alexandria Turnpike, a sewer or a drain leading across it immediately in front of the McKinneys property into a culvert which was inadequate and insufficient to carry the water from the drain, thereby causing it to flood the McKinneys property as stated in their petition. It further pleaded that "the ditches of the city were constructed by it more than forty years ago and were and constituted a permanent structure and have been continuously used since and maintained by the city at the location stated in the plaintiffs' petition; that their construction and maintenance was under a claim of right, adversely to the McKinneys and those under whom they claim title to their property."

The city offered to introduce as evidence the United States Weather Bureau's reports of rainfall in that vicinity during a portion of the time for which the McKinneys sue, and to which the evidence was directed. The court refused to permit these reports to be read to the jury. Of this the city complains. Conceding that they were competent and should have been admitted, it must likewise be conceded that their contents merely corroborate the oral testimony in the city's behalf, and therefore were merely accumulative and not decisive of any issue submitted to the jury. Hence, the action of the court in reference thereto, if in error, was harmless, and not so prejudicial as to justify a reversal.

It requested the court to give to the jury an instruction directing it, if it believed from the evidence that it had been in "the actual adverse use of the ditches over, under and across the land of the plaintiffs, continuously and uninterruptedly for fifteen years or more before the 23rd day of September, 1933, claiming the same openly and notoriously as its own adversely to all others, then and in that event the law is for the defendant and it should so find." It argues that on the pleadings and the evidence it was the duty of the court to give this instruction and its refusal demands a reversal.

In support of this argument it cites to us and relies

on City of Ludlow v. Broderick, 181 Ky. 123, 203 S. W. 1082, 1083; Walley v. Wiley, 56 Ind. App. 171, 104 N. E. 318, 319; Seigmund v. Tyner, 52 Ind. App. 581, 101, N. E. 20, 21; Zerban v. Eidmann, 258 Ill. 486, 101 N. E. 925. The principles enunciated in those cases are, the lower is subject to the servitude of receiving the natural and ordinary flow of surface water from the upper estate, and the lower proprietor cannot complain that the surface water from the upper is allowed to flow in the ordinary and usual manner onto his property; and where a city originally had the right to allow surface water, in its usual volume and natural course, to flow upon the lower it being the servient estate, the owner had no right to object to the free flow of the rainfall onto his property. And if and "when the water was first gathered into drains and cast upon this lower lot and the owner thereof had his remedy, had he invoked it, but having slumbered on his rights for more than 15 years before beginning proceedings his rights of whatever nature were barred and tolled" by the statute of limitation. City of Ludlow v. Broderick, supra.

The rule that continued adverse possession to maintain for fifteen consecutive years or more, a ditch for the flow of rainfall from the upper to the lower estate, is a bar to defeat an action for damages, was first announced in Manier v. Myers and Jones, 4 B. Mon. 514. It was reiterated in Harned v. Roby, etc., 205 Ky. 221, 265 S. W. 610. In those cases the cause of action was not based upon inadequacy of a ditch to carry the water from the upper to the lower estate, or upon the negligent construction thereof, or an allegation and proof that the conduit was permitted to become stopped up with debris or other substance. It should be noted that the McKinneys' cause of action is based solely upon the allegations that the city's ditches were inadequate for the purpose for which they were constructed; and that the city negligently suffered and permitted the same to become stopped up with mud, rock, and other substance, causing the rainfall conveyed thereby from the city's premises onto theirs.

An examination of other cases decided by this court shows we have laid down the following principles:

"(1) For a permanent structure, property built, a single recovery must be had for all damages; (2)

for a structure unlawfully or negligently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) for a temporary structure, recurring recoveries may be had as the injuries occur; (4) whether the original construction was unlawful or negligent is a question for the jury under the evidence when presented by the pleadings and the proof is conflicting.''

Madisonville, Hartford & Eastern R. R. Co. et al. v. Graham, 147 Ky. 604, 144 S. W. 737, 738.

These practical and sound rules are restated in L. & N. R. R. Co. et al. v. Bennett, 196 Ky. 679, 246 S. W. 121, 123, and in Honaker v. C. & O. Ry. Co., 209 Ky. 576, 273 S. W. 81. Since they were formulated, another has been adopted and applied in some cases. It reads:

''Where the structures, though permanent and negligently constructed, cannot be repaired or remedied so as to avoid the recurring injuries, at a reasonable expense, of repairing or remedying would be so great as to authorize, * * * in the exercise of its right of eminent domain, to condemn the property so injured by the negligent structure, then there must be a recovery once for all.''

L. & N. R. R. Co. et al. v. Bennett, supra.

''If the trouble may be remedied at a reasonable expense, it may be regarded as temporary; but this is a question for the jury. L. & N. R. R. Co. v. Whitsell, 125 Ky. 433 (101 S. W. 334, 31 Ky. Law Rep. 76); I. C. R. R. Co. v. Haynes (Ky.) 122 S. W. (210) 211; L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820 (139 S. W. 1073).'' L. & N. R. R. Co. et al. v. Bennett, supra; Dugan v. Long, 234 Ky. 511, 28 S. W. (2d) 765.

The burden was on the city to allege and prove facts to bring its ditches within the last-stated rule. It did neither. Aside from this, since the bringing of this action, the city has reconstructed them. This establishes that they were not permanent, but temporary, structures. The court properly refused to give the city's offered instructions covering its prescriptive right to the ditches.

Our examination of the evidence convinces us, though it is conflicting, that it is sufficient to support

the allegations of the McKinneys' petition, to overcome the city's defenses, and to authorize and sustain the jury's verdict.

In the light of the evidence, the ditches were not only temporary structures, but inadequate for the purpose for which they were constructed, negligently maintained, in that they were permitted to become stopped up, within five years next before the commencement of this action, and thereby the ordinary rainfall from the city's premises was caused to flow onto the yard to, and around, McKinneys' residence, thereby damaging it and its contents. The city argues that the evidence establishes the rainfall which damaged their property was unusual and extraordinary, and therefore they are not entitled to recover. The evidence as to the rainfall being unusual and extraordinary was conflicting, and the court by instruction No. 1 directed the jury not to allow damages for unusual and extraordinary rainfalls. The presumption is that if the jury believed from the evidence that either of the rains, on the dates designated by the McKinneys as having caused damages to their property, was unusual and extraordinary, it awarded therefor no damages.

No other errors are pointed out in the brief of the city, and being convinced that it is not entitled to a reversal because of any one or more or all of the errors of which it complains, the judgment is affirmed.