## Kentucky-Ohio Gas Co. v. Bowling.
(Decided May 26, 1936.)

472

MARTIN & SMITH for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This action is to recover damages for creating and maintainnig a private nuisance to the annoyance of the owner and his family and depreciating the market value of his home.

For ten or twelve years next before its institution, Ed. Bowling owned, and he and his family occupied, a home about two and a half miles from the corporate limits of the city of Ashland, in the outlying portion of the city, in what is known as Hood's Creek and Hood's Creek Road. It is a five-room cottage, with a cement block foundation placed below the surface. It was constructed of reasonably good material, good workmanship, and its chimneys and mantels are of brick. It is lighted with electric lights. It is located in a thinly populated vicinity. It fronts on a highway. Opposite, and about one hundred feet from it, are the power plant and pumping station of the Kentucky-Ohio Gas Company. The plant and pumping station were constructed in 1930. In a proceeding instituted in the District Court of the United States for the Eastern District of Kentucky, the plant, the pumping station, and equipment were sold at public sale, when it was purchased by the Kentucky-Ohio Gas Company. It acquired title thereunder by deed in

June, 1933. This deed also conveyed to it eighty pro-
ducing gas wells, pipe lines, equipment, gas wells con-
tracts, real estate, and other assets belonging to the
former owner. The sales contracts, it thereby acquired,
obligated it to the consumers to deliver under com-
pression the entire capacity of the eighty wells scat-
tered over a radius of some nine or ten miles, through
the entire life of the field, during six months, begin-
ning November 1st, and ending May 1st, each year
until the gas is exhausted. To draw the gas from the
eighty wells and deliver it under compression into
high-pressure lines for the six months beginning No-
vember 1st and ending May 1st, it operated two gas
engines, one eighty horse power, the other eighty-five
horse power capacity.

"'These engines were built upon reinforced
concrete foundations according to plans and speci-
fications provided by the manufacturer and under
the supervision of a skilled engineer, the witness,
Mr. Gesling. They were housed in a tile block
and brick building which sets back of the county
road some twenty-five or thirty feet. Directly in
front of this engine house and between it and ap-
pellee's residence is a three room brick and tile of-
fice building. To the rear of the engine house, as
one leaves the highway and appellee's residence
is a small boiler house, which is a metal building
constructed of steel sheets fastened to steel frames.
The roof and walls of the boiler house are sheet
iron. Near the engine house is a concrete water
tower, which extends into the air some twenty-five
or thirty feet, used to cool the gas by means of
running the pipes containing the natural gas
through the water tank so that cool water will pour
over the pipes. These pipes are connected with
the engines and pass through solid concrete walls
in order to go to and from the engines.

"Each engine has an exhaust pipe which pro-
duces a noise incident to the operation of all gas
engines."

After it acquired title to the property, in the sum-
mer of 1933, to obviate and eliminate noises, it con-
structed "a large brick stack or chimney about eight
or ten feet in diameter, extending some twenty or thir-

ty feet in the air and containing numerous air chambers into which the exhaust pipes of the gas engines were extended.'' This improvement eliminated the ''noises,'' but not the ''vibration.''

Bowling for his cause of action charges that the Kentucky-Ohio Gas Company's power developed at the power plant and pumping station, directly and naturally ''created, sent forth and distributed loud noises, vibrations and concussions, which have from time to time since the plant had been in operation, continuously shook'' his ''property and caused it to shake and tremble, * * * so that he and his family could not live in the property in peace and comfort or sleep during the night time,'' and ''have practically destroyed the use of plaintiff's property for residential purposes,'' all of which were without his consent and against his will. The defense was a denial. On the verdict of a jury a judgment was entered in Bowling's favor for $500.

The Kentucky-Ohio Gas Company, appealing, insists that ''the proof utterly fails to support the charge that loud noises were created by the operation of its pumping station or that the air vibrations complained of were negligently caused or that they were of such a degree or character as to constitute an annoyance''; the court erred in not directing a verdict for it, and ''in holding that the things complained of as an annoyance were temporary in their nature rather than permanent and so instructed the jury.''

It is unnecessary to reproduce the evidence. There is no evidence that the operation of the engines of the plant or the plant itself produced at any time any noises other than that made by the exhaust pipes. It is established beyond doubt that since the construction and use of the large brick stack or chimney and the air chambers therein, into which the exhaust pipes were extended, noises have been eliminated. There is no evidence of any vibration of the earth produced by the operation of the plant. It is well established by the evidence that its operation produces an air vibration which is caused by the intake pipes disturbing the air courses and currents, and when the pumping station is in operation, it thus shakes and jars Bowling's residence, so that the doors and windows rattle. ''It shakes

so at night that one can hardly rest," during six months beginning November 1st and Ending May 1st, each year.

Its power plant and pumping station so jarring and causing Bowling's residence to oscillate, thus disturbing and interrupting the enjoyment of his home as narrated by the witnesses, constituted a nuisance.

"A nuisance is something that is offensive, physically, to the senses, and by such offensiveness makes life uncomfortable." Rosehill Cemetery Co. v. City of Chicago, 352 Ill. 11, 185 N. E. 170, 177, 87 A. L. R. 742. "Whatsoever," says Blackstone, "unlawfully annoys, or doth damage to another, is a nuisance." North v. McDonald, 47 Barb. (N. Y.) 528. Another definition of the term is: "That is a nuisance which annoys or disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him." Baltimore & Potomac R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2. S. Ct. 719, 27 L. Ed. 739; Petroleum Refining Co. v. Commonwealth, 192 Ky. 272, 232 S. W. 421. A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business of making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case, and where the use made of his property by the person complained of is not unreasonable, it will not afford the basis of an action to recover damages. Orton v. Virginia-Carolina Chemical Co., 33 Tex. Civ. App. 577, 77 S. W. 632; Louisville & N. R. Co. v. Com., 158 Ky. 773, 166 S. W. 237.

"The law is well understood that every man has the exclusive dominion and right to the free enjoyment of his own property to use it as he pleases, and that his neighbor enjoys the same rights and privileges with his property; consequently it is the duty of each to so use his own as not to injure that of the other. This duty, however, must be taken with some qualifications, for as it has been held: 'In the nature of things and of society, it is not reasonable that every annoyance should constitute an injury such as the law will remedy or prevent. One may therefore make

a reasonable use of his right, though it may create some annoyance or inconvenience to his neighbor. * * * According to our settled notions and habits, there are convenient places, one for the home, one for the factory, but, as often happens, the two must be so near each other as to cause some inconvenience. The law cannot take notice of such inconvenience, if slight or reasonable, all things considered, but applies the common sense doctrine that the parties must give and take, live and let live. * * *' Powell v. B. & G. Furniture Co., 34 W. Va. 804, 809, 12 S. E. 1085, 1087, 12 L. R. A. 54, 55.''

Meeks v. Wood, 66 Ind. App. 594, 118 N. E. 591, 592.

" 'No one has the right to use his own, (not even those engaged in the most industrious and worthy enterprises) so as to injure others about him. The use and enjoyment must have reference to the rights of others.' Froelicher v. Ironworks, 111 La. 705, 35 So. 821, 64 L. R. A. 228; Froelicher v. Marine Works, 118 La. 1077, 43 So. 882; Kuhl v. Fertilizing Co., 117 La. 86, 41 So. 361; Perrin v. Crescent City Stockyard, 119 La. 83, 43 So. 938, 12 Ann. Cas. 903; Long v. Louisiana Creosoting Co., 137 La. 861, 69 So. 281; Civ. Code, art. 2315.''

Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632, 634.

It is generally recognized that the law does not justify or excuse invasion of another's premises with a nuisance with impunity, nor need the act complained of always be habitual or periodical to authorize the recovery of damages of the invader. Williams v. Cross et al., 16 Tenn. App. 454, 65 S. W. (2d) 198. To determine what constitutes a nuisance, the nature and characteristics of the person claimed to have been annoyed must be considered, and the question is, whether the nuisance will, or does, produce such a condition of things that, in the judgment of reasonable men, is productive of physical discomforts to persons of ordinary sensibilities and ordinary tastes and habits. Emrich v. Wood, supra. The amount, the intensity and the duration of the invasion with a nuisance, and the effect thereof on the value and enjoyment of the premises invaded, are questions of fact (Kennedy v. Frechette,

45 R. I. 399, 123 A. 146, the burden of proof resting upon the owner of the property invaded to establish the quality and quantity of his damages. Orton v. Virginia Carolina Chemical Co., supra.

Testing and evaluating the evidence adduced by these principles, it is plain it would not have been proper for the court to have directed a verdict for the company. There remains to be considered and determined the proper measure of his recoverable damages. In doing so, it is essential to ascertain and decide whether the nuisance complained of was of a permanent or temporary character. If it be permanent, usually it is necessary that it be created by the inherent character of the structure or business, and that its lawful and necessary operation creates a permanent injury; but where the structure or the business when properly conducted and operated does not constitute a nuisance and only becomes such through negligence, it is temporary. Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630; Great Northern Refining Co. v. Lutes, 190 Ky. 451, 227 S. W. 795; Emrich v. Marcucilli, 196 Ky. 495, 244 S. W. 865; Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. (2d) 518, 75 A. L. R. 1316. If the structure is in character relatively enduring and not likely to be abated, either voluntarily or by an order of court, it is generally held that the nuisance is a permanent one; and if the prospective damages resulting therefrom can be estimated with reasonable certainty, the diminution of the value of the property is immediately recoverable as damages. Highland Ave. & Bell R. Co. v. Matthews, 99 Ala. 24, 10 So. 267, 14 L. R. A. 462; Finley v. Hershey, 41 Iowa, 389; Troy v. Cheshire R. Co., 23 N. H. 83, 55 Am. Dec. 177; Southern R. Co. v. White, 128 Va. 551, 104 S. E. 865; Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334, 53 S. Ct. 602, 77 L. Ed. 1208.

It is ruled that a nuisance may be regarded as permanent, where the damages recoverable would obviously be small as compared with the cause of its removal or installing another or an auxiliary plant. Also, if the owner of the property damaged by the nuisance would be obliged to bring from time to time actions for his damages in rental, would be so onerous as

to deny him adequate relief. Harrisonville v. W. S. Dickey Clay Mfg. Co., supra.

And permanent damages are allowable where the nuisance, although arising from a continuing cause, cannot be abated because of public interest. In Northern Indiana Public Service Co. v. W. J. & M. S. Vesey (Ind. Sup.) 200 N. E. 620, 626, the court said:

"The manner of the operation of the gas plant created a nuisance under the findings of the court, and that nuisance by the same findings and judgment is permitted to stand and to continue for all time to heap injury upon the appellee's property. It is reasonable that appellant should respond in damages in one sum in order that appellee will not be compelled to file and maintain from time to time a series of actions for damages. * * * The fact that a nuisance is not legally abatable, but, by authority of law, either legislative or judicial is permitted to exist, is sufficient evidence to presume that it will continue to operate under the same conditions for an indefinite period. The fact that the appellant could desist voluntarily from the manufacture of artificial gas and discontinue the use of its plant does not restrict the rights of the appellee to the recovery of temporary damages only."

Where the structure or business is permanent within the purview of the principles herein reiterated, but the structure is negligently constructed, or if either is negligently operated, recurring damages are recoverable. Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630; City of Covington v. McKinney, 263 Ky. 131, 92 S. W. (2d) 1. In either case, however, the duty rests upon the person damaged to minimize his damages if it is in his power to do so. Sedgwick, on damages, vol. 3 (9th Ed.) sec. 947, p. 1954; Petroleum Exploration v. White, 237 Ky. 10, 34 S. W. (2d) 738; Chesapeake & O. R. Co. v. Clifton, 237 Ky. 519, 35 S. W. (2d) 884.

It is very plain that the facts bring the Kentucky-Ohio Gas Company's business and power plant and pumping station within the term permanent, as it is herein defined, and establish that it was not negligent-

ly constructed nor negligently operated. Therefore, the measure of Bowling's damages is the dimunition of the market value of his property, proximately resulting from its invasion with the nuisance complained of.

The annoyance and discomfort of himself and family caused by the oscillation of his residence and the shaking and rattling of the doors and windows are not elements of damages for which he may have a recovery in addition to the lessening of the market value of his property. Evidence thereof is admissible only for the purpose of showing the dimunition of the salable value of his property as the nuisance affected it. In measuring his damages, the dimunition of its salable value necessarily includes the annoyance and discomfort which directly affects such value. It is not, therefore, proper to permit a recovery both for the dimunition of the vendible or market value of the property and for the annoyance and discomfort which necessarily enter into and constitute a part of the diminution of such value. To do so is to allow double recovery. Gay v. Perry, 205 Ky. 38, 265 S. W. 437, and cases cited.

For form of an approval instructed as to the measure of damage, see City of Paducah v. Allen, 111 Ky. 361, 63 S. W. 981, 23 Ky. Law Rep. 701, 98 Am. St. Rep. 422. As to minimizing damages, see form approved in H. T. Whitson Lumber Co. v. Upchurch, 198 Ky. 127, 248 S. W. 243.

The gas company complains of the court's instruction containing the word "noises." It is true that the evidence shows clearly and positively that since the company had erected its stack or chimney with air chambers for the exhaust pipes, "noises" have ceased. But the company's offered instruction contains the same vice, and therefore it is in no attitude in this court to complain of it.

Whether the verdict is excessive, we express no opinion.

Wherefore, the judgment is reversed for a new trial consistent herewith.