# Kidd v. Jody et al.

April 21, 1942.

C. R. Luker for appellant.

Murray L. Brown for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, J. W. Kidd, owns sixty acres of land in Laurel county three miles south of London fronting on U. S. Highway 25. Adjoining appellant's land on the west is a tract of land owned by appellee John Jody. A creek or branch rises on the Jody land and flows through appellant's land and through a culvert under the highway. In 1932 appellant constructed a wall or dam 6 feet high along his eastern line and across the creek. After freshets when the water reached the top of the dam it backed up onto appellee's land. No objection appears to have been made by appellee until after he leased his land in 1935 to several businessmen in the city of London for the purpose of laying out a golf course. In April, 1940, John Jody and his lessees brought an action in the Laurel circuit court against J. W. Kidd in which they alleged that the defendant had wrongfully erected on his land an embankment of earth, concrete, and rock which obstructed the natural flow of the water through defendant's land and caused it to back upon and overflow the John Jody tract of land and to destroy the No. 9 fairway of the golf course. They sought damages in the sum of $1,000, and asked for a mandatory injunction compelling the defendant to remove the embankment from the stream and to restore the natural flow of the water from the land of John Jody. A few days after this suit was filed J. W. Kidd and John Jody entered into a written contract which, when executed, should be in full settlement of all matters in controversy between them. Kidd agreed to lower the dam to a depth sufficient "to lower the surface of the water in the Kidd pond and the surface of the water in the branch running across John Jody's land into and across J. W. Kidd's land so that the surface of said waters when lowered as herein provided will be 2 inches below the level of the point where the tile which leads from the spring in No. 9 fairway of the golf course enters the aforesaid branch." The contract further provided that "when it is fully carried out (it) is in full settlement of said law suit now pending between said John Jody and others against the said J. W. Kidd, and is in full satisfaction of all damages therein claimed." Kidd failed to lower the dam, and on May 7, 1940, John Jody and his lessees filed another action in the Laurel circuit court against J. W. Kidd in which they sought specific performance of the contract entered into between Kidd and Jody in settlement of the first action. The defendant filed an answer in which he ad-

mitted that the contract provided that the dam should be lowered 2 inches below the level of the point where the tile which leads from the spring in No. 9 fairway of the golf course entered the branch, and alleged that he was willing to comply with the terms of the contract but that the plaintiffs were claiming that the tile referred to in the contract was a tile other than the one which the defendant understood had been agreed upon and was not the tile which leads from the spring in No. 9 fairway. It seems there are two tiles which drain the Jody land and lead to the branch, and the only real issue in the case is whether the lower or upper tile is the one referred to in the contract. The chancellor found that the lower tile was the one referred to in the contract, and he entered a judgment directing specific performance accordingly.

After the petition in the second action was filed, defendant filed a demurrer to the petition in the first action and now insists that this should have been sustained. He also filed a plea in abatement. The petition in the first action cannot be considered in this case which involves only a contract made in settlement of the action then pending, and, consequently, the demurrer to the first petition and the plea in abatement likewise have no place in the present case. For the same reason appellant's plea of limitations is unavailing. Even if the dam had been a permanent structure and the plaintiff's cause of action in the first suit had been barred, appellant, in the contract settling that controversy, waived his right to rely on the 5-year statute of limitations, Kentucky Statutes, Section 2515, which applies where the injury or nuisance complained of is permanent. The evidence shows, however, that the structure is not permanent within the meaning of the cases holding that the 5-year statute applies but is one which, at reasonable expense, can be altered so as to abate the nuisance that has been created on the Jody land.

> "A permanent structure of this character is defined as one which may not be readily remedied, removed, or abated at a reasonable expense, or one of a durable character evidently intended to last indefinitely, costing as much to alter as to build it in the first instance." Dugan v. Long, 234 Ky. 511, 28 S. W. (2d) 765, 766.

If a structure causing the injury or nuisance can

be easily changed or repaired at reasonable expense, it may be regarded as temporary. City of Covington v. McKinney, 263 Ky. 131, 92 S. W. (2d) 1.

The real issue in the case and the only one worthy of consideration involves the identity or location of the tile referred to in the contract as "the tile which leads from the spring in No. 9 fairway of the golf course." Before the written contract was prepared and signed, the appellant and John Jody, C. H. Cook, and Murray L. Brown, Jody's attorney, went upon the premises for the purpose of ascertaining to what extent the dam would have to be lowered in order to restore the natural flow of the water on Jody's land. Jody, Cook, and Brown all testified that the parties present on that occasion agreed that the dam should be lowered so that the surface of the water in the pond should be 2 inches below the point where the lower tile enters the branch. Appellant opened a door or gate in the dam and lowered the water to that point, and it was demonstrated that at this level the natural flow of the water on Jody's land is restored. A. T. Rawlings, a witness for appellees, testified that he was present when the Jody land was tiled and that two tiles were laid in fairway No. 9. The lower tile leads from a spring in the fairway and enters the branch at a depth of 2½ or 3 feet. The upper tile is near the surface and drains a tract of low ground between fairways 3 and 8. It enters the branch in fairway No. 9, but does not lead from any spring in that fairway. Appellant testified that he understood the tile referred to in the contract was the upper tile, but he admits that this tile was neither viewed nor discussed by the parties when they went on the premises for the purpose of settling the controversy. It is conceded that lowering the surface of the water in appellant's pond to a point 2 inches below the mouth of the upper tile will not abate the nuisance of which appellees complain.

We think the evidence overwhelmingly sustains the chancellor's finding that the tile referred to in the contract is the one known as the lower tile, and the judgment is affirmed.