John W. **BAKER**, Norma J. Baker, Douglas Baker, and Jennifer Baker, Plaintiffs–Appellants,

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant–Appellee.**

No. 94–3513.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1995.

Decided Nov. 30, 1995.

Rehearing Denied Jan. 8, 1996.

David S. McCrea (argued), McCrea & McCrea, Bloomington, IN, for Plaintiffs–Appellants.

Jan Feldman (argued), Melisa G. Thompson, Phelan, Cahill & Quinlan, Chicago, IL, Joseph B. Carney, John R. Schaibley, III, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before WOOD, Jr., ROVNER, and EVANS, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

John W. Baker, Norma J. Baker, Douglas Baker, and Jennifer Baker (collectively, "the Bakers") appeal the decision of the district court to partially grant the motion to dismiss filed by Westinghouse Electric Corporation ("Westinghouse"). For the reasons given below, we affirm the decision of the district court.

## I. BACKGROUND

### A.

The facts of this matter, viewed in the light most favorable to the Bakers at this stage of the proceedings, are as follows. John W. Baker was employed by Westinghouse at its Muncie, Indiana facility from 1965 until 1984. In 1973, Baker requested that he be allowed to remove to his home some scrap insulation from the Muncie plant for his personal use. Westinghouse granted this request despite its knowledge that this insulation was contaminated with polychlorinated biphenyls—more commonly known as "PCBs." Before its removal, the insulation in question had been attached to certain equipment in the Muncie plant. Baker, who did not know of the insulation's contamination, used it to insulate his garage, a chicken coop, and an underground water line.

In 1989, Baker's wife, Norma J. Baker, became concerned that the insulation might contain PCBs. She consequently contacted the United States Environmental Protection Agency ("the EPA"). The EPA initially declined to take any action; Mrs. Baker responded by threatening to burn down her garage. The EPA thereafter conducted a removal action pursuant to its authority under the Comprehensive Environmental Re-

sponse, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*

### B.

The procedural history of this case is somewhat complex; the relevant portions are summarized here in order to illuminate the present stance of the parties. The Bakers, together with their children Douglas and Jennifer, initially brought suit against Westinghouse in October, 1990, in state court. Westinghouse filed a Notice of Removal on November 6, 1990—jurisdiction in the district court being founded upon diversity of citizenship.

The Bakers then filed an amended complaint on January 8, 1991, which alleged causes of action for negligence, nuisance, indemnity, and intentional misconduct under Indiana law. The amended complaint sought compensation for the following categories of damages: (1) the costs of future medical monitoring; (2) compensatory damages for annoyance and disruption; (3) compensatory damages for loss of homeowner's insurance; (4) compensatory damages for the decrease in the value of their real estate; (5) indemnification for any cleanup costs assessed by the EPA; and (6) punitive damages.

Westinghouse filed a motion on February 19, 1991, to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 25, 1991, the district court partially granted this motion, dismissing the Bakers' nuisance count.[1] The district court ruled that the Bakers had failed to state a cause of action for nuisance because the case did not involve a conflict between neighboring land uses.[2] Furthermore, the district court dismissed, without prejudice, the Bakers' claims for future medical monitoring expenses. The district court did, however, afford the Bakers an opportunity to amend their medical monitoring claim: The district court stated that it would reconsider the matter if the Bakers amended

their complaint, within twenty days, to allege that some present physical injury was caused by the contaminated insulation.

The Bakers then filed a motion for leave to file a second amended complaint on July 11, 1991. On November 15, 1991, the district court denied this motion as the second amended complaint contained counts that had been dismissed by the district court in its June 25, 1991 order. The district court ordered the Bakers to file a third amended complaint which contained only counts unaffected by its previous order.

The Bakers filed a third amended complaint on November 27, 1991. The third amended complaint was essentially identical to the first amended complaint, except that it no longer contained counts based upon nuisance and indemnity. Furthermore, the third amended complaint did not pray for compensation for annoyance and disruption.

On June 15, 1992, Westinghouse filed a motion for summary judgment on the two counts—negligence and intentional misconduct—remaining in the third amended complaint. The Bakers had earlier, on June 10, 1992, filed a motion for partial summary judgment. On November 23, 1992, the district court partially granted Westinghouse's motion; the Bakers' motion was wholly denied. The district court first dismissed the Bakers' damage claims for future medical monitoring expenses insofar as they related to John Baker after it found that no genuine issue existed regarding whether he had suffered from any physical injury caused by exposure to PCBs at his home. The court concluded that, if John did suffer from PCB-related personal injuries, no evidence of record indicated that that harm had not occurred on the work site. The district court further found that the Bakers had withdrawn their medical monitoring and personal injury claims regarding Norma, Douglas, and Jennifer. This order did, however, reject Westinghouse's motion for summary judgment to

---

**1.** In addition, the Bakers conceded that their claim for indemnification was premature and they stipulated to its dismissal without prejudice. Westinghouse later, without admitting liability, reimbursed the EPA for the costs of the removal action.

**2.** On July 10, 1991, the Bakers filed a motion seeking the district court's reconsideration of its dismissal of the Bakers' nuisance claim; the district court denied this motion on September 19, 1991.

the extent that that motion challenged (1) the Bakers' claims relating to the negligent diminishment of the value of their property and the loss of their homeowner's insurance; and (2) the Bakers' claims for punitive damages.

Westinghouse then filed a second motion for summary judgment on November 24, 1993. In this motion, Westinghouse alleged that the Bakers had failed to introduce any admissible evidence regarding (1) a decrease in their property's value due to the presence of PCB contamination; and (2) their inability to procure homeowner's insurance. Westinghouse also argued that summary judgment should be granted in its favor on the punitive damages claim. On April 18, 1994, the district court partially granted Westinghouse's second motion for summary judgment after finding that the Bakers had failed to establish that their property had diminished in value. Then, on May 13, 1994, Westinghouse filed a supplemental motion for summary judgment. This motion addressed the Bakers' alleged inability to obtain homeowner's insurance and punitive damages, the Bakers' last remaining claims. On September 19, 1994, the district court granted this supplemental motion in full.

To summarize, the district court has cumulatively addressed and dismissed the negligence, nuisance, indemnification, and wilful misconduct counts of the Bakers' complaints. Furthermore, the district court has expressly rejected the Bakers' damage claims which were based upon (1) future medical monitoring; (2) present personal injuries; (3) loss of homeowner's insurance; (4) the decrease in the value of their real estate; (5) indemnification for cleanup costs; and (6) punitive damages. The Bakers have limited their appeal before this court, however, to the district court's decision to dismiss their nuisance count.

## II. STANDARD OF REVIEW

In reviewing the district court's decision to grant a motion to dismiss, we note that such a motion is properly granted only if "it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir. 1985) (citation omitted), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). In the course of our review, "[w]e take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs." *Id.* (citation omitted).

## III. DISCUSSION

The Bakers focus their appeal on the district court's ruling that the parties' properties must be neighboring in order to bring a nuisance claim under Indiana law.[3] Before we may reach the propriety of this decision, however, we must first address Westinghouse's argument that the Bakers have waived their nuisance claim.

Westinghouse reasons that, since the Bakers have not appealed the district court's adverse findings regarding their various damage claims, the Bakers have effectively waived their nuisance count as they have nothing to gain by prevailing on this count. The Bakers acknowledge the waiver of their right to challenge the district court's rulings which pertain to their future medical monitoring, present physical injuries, homeowner's insurance, decrease in property value, and punitive damages claims, but they allege that they have preserved the right to pursue compensatory damages for the annoyance and disruption caused by Westinghouse's actions. As discussed above, the district court did not ever expressly rule upon the Bakers' claim for annoyance and disruption. Although this claim was present in the Bakers' first amended complaint, the district court limited its ruling on that complaint to a dismissal of the nuisance count and a dismissal without prejudice of the claim for medical monitoring damages. The Bakers subsequently excised the annoyance and dis-

---

**3.** Indiana expansively defines a nuisance as follows: "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind.Code § 34–1–52–1.

ruption claim before filing their third amended complaint. The Bakers explain that they dropped this claim because annoyance and disruption damages were not available under the remaining causes of action in their suit.

 Assuming *arguendo* that the Bakers have preserved the right to pursue annoyance and disruption damages, our review of this matter nonetheless convinces us that the result achieved below must be affirmed. As Westinghouse has argued, Indiana does not recognize a negligence suit based upon an allegation of annoyance alone. *See Sherk v. Indiana Waste Sys., Inc.,* 495 N.E.2d 815, 818 (Ind.Ct.App.1986) ("Mere annoyance or inconvenience will not support an action for a nuisance because the damages resulting therefrom are deemed *damnum absque injuria* in recognition of the fact life is not perfect.") (citations omitted). Annoyance-based nuisance claims are cognizable, but the annoyance at issue must be tied to some sort of concrete harm.

A concrete harm is required in light of the "common sense" balancing test which § 34-1-52-1 establishes. *Sherk,* 495 N.E.2d at 818. Under § 34-1-52-1, a defendant will only be enjoined or sanctioned for his conduct if it is unreasonable. *Id.* Reasonableness, in turn, is ascertained by comparing the competing interests of the parties. *Id.* The interests of the plaintiff in restraining the defendant's conduct are largely determined by the degree of harm that that conduct inflicts upon the plaintiff's property. *Id.* Therefore, if the plaintiff in a nuisance action is unable to prove that the defendant's conduct has harmed the plaintiff, the plaintiff will be unable to prove that the complained-of conduct is unreasonable.

In this case, the Bakers have waived all the damage claims—beyond their mere annoyance and disruption claim—that they could conceivably bring were this matter to be remanded to the district court. Thus, the Bakers can not prove that Westinghouse's conduct was unreasonable. "[I]n the nature of things and of society, it is not reasonable that every annoyance should constitute an injury such as the law will remedy or prevent.... [T]he parties must give and take,

live and let live...." *Meeks v. Wood,* 66 Ind.App. 594, 597, 118 N.E. 591, 592 (Ind. App.1918) (quoting *Powell v. Bentley & Gerwig Furniture Co.,* 34 W.Va. 804, 809–10, 12 S.E. 1085, 1087 (W.Va.1891)).

As we noted, the Bakers have argued that the district court erred when it ruled that the properties of the parties to a nuisance action must be neighboring. Neither party, however, was able to cite an applicable Indiana case expressly stating or refuting that proposition. In light of our discussion above, we need not reach this unresolved question of Indiana law.

## IV.   CONCLUSION

For the reasons given above, we affirm the decision of the district court.

Affirmed.